# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 29, 2021         Decided August 17, 2021

No. 20-5079

SELVIN LEONARDY SOLIS MEZA,
APPELLANT

v.

TRACY RENAUD, ACTING DIRECTOR, UNITED STATES
CITIZENSHIP AND IMMIGRATION SERVICES,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-01322)

———

*Geoffrey Forney* argued the cause for appellant. With him
on the briefs was *Bradley B. Banias.*

*Mary L. Larakers*, Trial Attorney, U.S. Department of
Justice, argued the cause for appellee. With her on the briefs
were *Brian M. Boynton*, Acting Assistant Attorney General,
and *Elianis N. Perez*, Assistant Director. *R. Craig Lawrence*
and *Marsha W. Yee*, Assistant U.S. Attorneys, entered
appearances.

Before: TATEL, MILLETT, and KATSAS, *Circuit Judges.*

Opinion for the Court filed *Circuit Judge* KATSAS.

2

KATSAS, *Circuit Judge*: Seeking an adjustment of status from the United States Citizenship and Immigration Services, Selvin Solis Meza contends that he is an arriving alien—a question resolved against him in a prior removal proceeding. This case presents the question whether the Immigration and Nationality Act barred the district court from considering Meza's argument.

I

A

The INA governs the removal of aliens from the United States. It provides that an alien is inadmissible if he is "present in the United States without being admitted or paroled" or if he arrived in the United States "at any time or place other than as designated by the Attorney General." 8 U.S.C. § 1182(a)(6)(A)(i).[1] The INA makes inadmissible aliens removable. *Id.* §§ 1227(a)(1)(A), 1229a(e)(2).

To commence removal proceedings, the government must issue the alien a "notice to appear" at a removal hearing. 8 U.S.C. § 1229(a)(1). This notice must inform the alien of the charges against him and the time and place of the hearing. *Id.* § 1229(a)(1)(D), (G)(i). If the alien does not attend the hearing, an immigration judge may order him removed *in absentia* upon finding "clear, unequivocal, and convincing evidence" that the alien had notice of the hearing and is removable. *Id.* § 1229a(b)(5)(A).

---

[1] When Meza entered the country, the Attorney General was responsible for designating times and places of arrival. The Homeland Security Act of 2002 later transferred this authority to the Secretary of Homeland Security, though the INA still refers to the Attorney General. *See* 6 U.S.C. § 251(2).

Section 1252 of Title 8 provides for judicial review of final removal orders. As relevant here, it states that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). Such a petition must be filed within 30 days of the removal order, in the court of appeals for the judicial circuit where the removal proceeding was conducted. *Id.* § 1252(b)(1), (2). Section 1252 further provides that such a petition is the sole means for obtaining judicial review of "questions of law and fact … arising from any action taken or proceeding brought to remove an alien." *Id.* § 1252(b)(9).

B

The Secretary of Homeland Security may adjust the status of aliens who have been "admitted or paroled" into the United States to that of a lawful permanent resident. 8 U.S.C. § 1255(a) (authority of Attorney General); *see* 6 U.S.C. § 271(b)(1) (transfer of authority to the Secretary). Admission occurs when an immigration officer inspects the alien and authorizes him to enter the United States. 8 U.S.C. § 1101(a)(13)(A). Parole occurs when an immigration officer allows an alien into the United States "temporarily … for urgent humanitarian reasons or significant public benefit." *Id.* § 1182(d)(5)(A). The Secretary may adjust the status of admitted or paroled aliens "in his discretion and under such regulations as he may prescribe." *Id.* § 1255(a).

The regulations provide for immigration judges or USCIS to adjudicate applications for status adjustment. Immigration judges have exclusive jurisdiction over any application filed by an alien "who has been placed in ... removal proceedings (other than as an arriving alien)." 8 C.F.R. § 1245.2(a)(1)(i). USCIS has jurisdiction over all other applications, including those

filed by aliens placed in removal proceedings as arriving aliens. *Id.* § 245.2(a)(1). As relevant here, an arriving alien is "an applicant for admission coming or attempting to come into the United States at a port-of-entry." *Id.* § 1.2.

C

In 2002, the Immigration and Naturalization Service served on Meza a notice to appear at a removal hearing in Atlanta, Georgia. The notice charged that Meza is not a United States citizen, that he entered the country "at or near Brownsville, Texas," and that he was "not then admitted or paroled after inspection by an Immigration Officer." App. 34. In a supporting document, the INS stated that Meza had been apprehended by an agent who observed him "wading the Rio Grande River into the United States," thus entering the country "illegally at a point not designated by the U.S. Attorney General." *Id.* at 28–29; *see also id.* at 29 (agent recounting that Meza "crossed into the U.S. by using a tire tube").

An immigration judge ordered Meza removed *in absentia*. The judge found that Meza was removable "as charged" because documentary evidence "established the truth of the factual allegations in the Notice to Appear." App. 33. Meza neither appeared at his removal hearing nor filed a timely petition for review in the Eleventh Circuit. But he did remain in the United States.

In 2017, Meza applied to USCIS for an adjustment of his status. USCIS denied the application for lack of jurisdiction. In its view, because Meza had been placed in a removal proceeding and was not an arriving alien, the immigration courts had exclusive jurisdiction over the application.

Meza challenged this decision in federal district court. He argued that USCIS was required to review his application

because he was an arriving alien. To support that claim, he pointed to a checkbox on his notice to appear that labeled him as such. He further alleged that immigration officers had paroled him into the United States.

The district court held that it lacked jurisdiction to review USCIS's decision because Meza had not exhausted his administrative remedies. *Meza v. Cuccinelli*, 438 F. Supp. 3d 25, 34–35 (D.D.C. 2020). We have jurisdiction over Meza's appeal under 28 U.S.C. § 1291.

II

We review *de novo* the legal question whether the district court had jurisdiction. *See Am. Hosp. Ass'n v. Azar*, 895 F.3d 822, 825 (D.C. Cir. 2018). On *de novo* review, we generally may affirm on any ground supported by the record. *See, e.g.*, *Jones v. Bernanke*, 557 F.3d 670, 674 (D.C. Cir. 2009). And although we must decide jurisdictional questions before merits ones, we may consider jurisdictional questions in any order that we deem prudent. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584–85 (1999). The district court held that it lacked jurisdiction because Meza had failed to exhaust administrative remedies. We affirm on the alternative ground that section 1252 divested the court of jurisdiction.

Section 1252 establishes the scheme for judicial review of final removal orders. Section 1252(a)(5) provides that a petition for review, timely filed in the appropriate court of appeals, is the "sole and exclusive means for judicial review of an order of removal." There is one exception, for certain system-wide challenges to written rules governing expedited removal, *see* 8 U.S.C. § 1252(e)(3), but it does not apply here. Section 1252(b)(9) extends the exclusivity rule to questions arising from any removal proceeding, then makes it a jurisdictional bar. First, section 1252(b)(9) provides that

"[j]udicial review of all questions of law and fact … arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." Then, it states that, except as provided in section 1252 itself, "no court shall have jurisdiction … to review such an order or such questions of law or fact." The dispositive question here is whether Meza seeks judicial review of a question "arising from" his removal proceeding. We conclude that he does.

In our view, section 1252(b)(9) prevents an alien from re-litigating, outside the context of a petition for review, a question decided against him in the removal proceeding. In ordinary usage, an issue decided in a proceeding arises from the proceeding. *See Arise*, *Black's Law Dictionary* (7th ed. 1999) ("To originate; stem (from)"). Moreover, section 1252(a)(5) covers "review of an order of removal," while section 1252(b)(9) separately covers review of "questions of law and fact … arising from" removal proceedings. Given that statutory structure, we must construe the latter phrase to extend beyond the former. Meza's only contention about the scope of section 1252(b)(9)—that it applies only where an alien seeks to set aside the removal order itself—is thus mistaken.

In the district court, Meza sought review of USCIS's decision refusing to consider his application for adjustment of status. That decision was correct if Meza was placed in removal proceedings and was not an arriving alien. *See* 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1)(i). It is undisputed that Meza was placed in removal proceedings in 2002, though he was never removed. So the dispositive issue below was whether Meza was an arriving alien. USCIS concluded that he was not. And Meza, to obtain relief in the district court, had to show that he was.

The immigration judge decided this issue adversely to Meza in his removal proceeding. As relevant here, an "arriving alien" is "an applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2. The immigration judge ordered Meza removed "on the charge contained in the Notice to Appear," App. 33, namely that Meza was subject to removal under section 212(a)(6)(A)(i) of the INA, App. 34. That provision applies to aliens who are "present in the United States without being admitted or paroled, or who arrive[] in the United States at any time or place other than as designated by the Attorney General." 8 U.S.C. § 1182(a)(6)(A)(i). An arriving alien is not "present in the United States," because, under longstanding principles of immigration law, an alien arriving at a port of entry is "to be regarded as stopped at the boundary line and kept there unless and until h[is] right to enter should be declared." *Kaplan v. Tod*, 267 U.S. 228, 230 (1925); *see also DHS v. Thuraissigiam*, 140 S. Ct. 1959, 1982 (2020). Likewise, an arriving alien has not arrived at an undesignated "time or place," because ports of entry are places designated for lawful entry. 8 C.F.R. § 235.1(a). Thus, by ordering Meza removed under section 1182(a)(6)(A)(i), the immigration judge necessarily decided that Meza was not an arriving alien.

The factual allegations in the notice, and the evidence supporting them, confirm this conclusion. The immigration judge concluded that "documentary evidence … established the truth of the factual allegations contained in the Notice to Appear." App. 33. The notice alleged that Meza "arrived in the United States at or near Brownsville, Texas," *id.* at 34, rather than at a specific point of entry. And a supporting document recounted that a border patrol officer had caught Meza coming into the United States by using a tire tube to wade across the Rio Grande—which, of course, is not a place designated for lawful entry.

Meza makes two arguments for why he is an arriving alien. Both challenge the immigration judge's determination that Meza was not an arriving alien and was removable.

First, Meza argues that he was paroled into the United States, and he invokes decisions holding that paroled aliens are arriving aliens. *See*, *e.g.*, *Zheng v. Gonzales*, 422 F.3d 98, 110–11 (3d Cir. 2005). But the immigration judge ordered Meza removed based on the charge and factual allegations in the notice to appear, which repeatedly stated that Meza was neither admitted nor paroled into the United States.

Second, Meza points to a checkbox on the notice to appear, which labels him an arriving alien. But in ordering Meza removed, the immigration judge necessarily concluded otherwise, based on other portions of the notice and the evidence before him. As to the notice itself, in the blank space for factual allegations, the issuing officer wrote out that Meza "arrived in the United States at or near Brownsville, Texas, on or about April 23, 2002" and was "not then admitted or paroled after inspection by an Immigration Officer." App. 34. Likewise, in the blank space for the formal charge, the officer wrote out that Meza was subject to removal under section "212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended," because he was "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." *Id.* To be sure, the officer also checked the box next to the pre-written statement "[y]ou are an arriving alien." *Id.* To decide the removal question, the immigration judge had to consider the elements of section 212(a)(6)(A)(i), the entirety of the notice to appear, and the evidence about the Rio Grande crossing. In doing so, and in finding Meza removable despite the box-check, the immigration judge necessarily treated it as a mistake.

To succeed in this case, Meza must show that he was an arriving alien, even though the immigration judge concluded otherwise. Meza thus seeks to contest a question of fact arising from his removal proceeding, which he could have done only by filing a timely petition for review of his removal order in the Eleventh Circuit. Under section 1252(b)(9), the district court lacked jurisdiction to consider what is in effect a collateral attack on findings made in his final removal order.[2]

*Affirmed.*

---

[2] Given our disposition under section 1252(b)(9), we need not address whether other provisions in section 1252 independently barred judicial review in this case. We also need not address whether the district court was correct to conclude that review in this case was barred because Meza had failed to exhaust available administrative remedies.