# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 27, 2023       Decided March 17, 2023

No. 21-5003

ADIL MOHAMED ABUZEID, M.D., AND MELISSA ANNE
ABUZEID,
APPELLANTS

v.

ALEJANDRO N. MAYORKAS, SECRETARY, U.S. DEPARTMENT
OF HOMELAND SECURITY, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-00382)

———

*Brian Schmitt* argued the cause and filed the briefs for appellants.

*Cara E. Alsterberg*, Trial Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief was *Brian M. Boynton*, Principal Deputy Assistant Attorney General.

Before: PAN, *Circuit Judge*, and SENTELLE and TATEL, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* PAN.

PAN, *Circuit Judge*:  Dr. Adil Mohamed Abuzeid is a dual citizen of the United Kingdom and Saudi Arabia, who entered the United States on a visa to receive graduate medical education.  He sought to adjust his immigration status to that of a legal permanent resident under § 1255 of the Immigration and Nationality Act (the "INA").  The United States Citizenship and Immigration Services ("USCIS") determined that he was ineligible for adjustment of status and denied his applications.  Dr. Abuzeid and his wife, Melissa Anne Abuzeid, challenged that decision by filing suit under the Administrative Procedure Act ("APA").  The district court dismissed the case for lack of subject-matter jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(i).  We affirm.

## I.  Background

### a.  *Legal Framework*

Section 1255 of the INA provides a way for noncitizens already admitted or paroled into the United States on a temporary basis to adjust their status to that of a legal permanent resident.  *See Meza v. Renaud*, 9 F.4th 930, 932 (D.C. Cir. 2021) (discussing 8 U.S.C. § 1255).  An applicant for adjustment of status must show that he meets three criteria: "(1) [he has made] an application for such adjustment, (2) [he] is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed."  8 U.S.C. § 1255(a).

A J-1 visa is authorized for "exchange visitors" who come to the United States temporarily to participate in an approved program for teaching, studying, research, training, or other similar activities.  8 U.S.C. § 1101(a)(15)(J); 22 C.F.R.

§ 41.62(a). A noncitizen who enters the United States on a J-1 visa to "receive graduate medical education or training" must commit to returning to the country of his nationality or last residence upon completion of the education or training. 8 U.S.C. § 1182(j)(1)(C). Such a visa holder is not "eligible to apply for an immigrant visa, or for permanent residence . . . until it is established that [he] has resided and been physically present in the country of his nationality or his last residence for an aggregate of at least two years" after completion of his educational or training program, subject to certain exceptions not at issue here. 8 U.S.C. § 1182(e).[1]

Even if a noncitizen demonstrates that he is eligible for adjustment to permanent-resident status, the requested relief is not guaranteed. The Secretary of Homeland Security — through USCIS — has discretion to grant or to refuse the requested status. *See INS v. St. Cyr*, 533 U.S. 289, 307 (2001) (noting the "distinction between eligibility for discretionary relief, on the one hand, and the favorable exercise of discretion, on the other hand"); *Randall v. Meese*, 854 F.2d 472, 478–80 (D.C. Cir. 1988) (discussing distinction between eligibility determination and discretionary decision to grant adjustment of

---

[1] Congress enacted the two-year foreign residency requirement in 1956 to ensure "that those individuals who are brought to the United States will return either to their own or to another cooperating country to impart to their friends and the society in which they live impressions of the United States and its culture." S. Rep. No. 84-1608, at 2 (1956), *reprinted in* 1956 U.S.C.C.A.N. 2662, 2663; *accord Chong v. Dir., U.S. Info. Agency*, 821 F.2d 171, 177–78 (3d Cir. 1987). Over the years, the requirement came to serve a related purpose: "[T]o alleviate possible 'brain drain' from various countries" of medical professionals. H.R. Rep. No. 97-264, at 16 (1981), *reprinted in* 1981 U.S.C.C.A.N. 2577, 2585; *accord Newton v. INS*, 736 F.2d 336, 341 (6th Cir. 1984).

status).[2]  A decision to grant discretionary relief to an eligible applicant is "not a matter of right under any circumstances, but rather is in all cases a matter of grace."  *St. Cyr*, 533 U.S. at 308 (quoting *Jay v. Boyd*, 351 U.S. 345, 353–54 (1956)).

This case raises the question of what a noncitizen can do if USCIS denies his application for adjustment of status.  In prior cases, such unsuccessful applicants have brought suit under the APA in a United States district court, challenging the agency's decision as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see, e.g.*, *Sanchez v. Mayorkas*, 141 S. Ct. 1809, 1812 (2021).  The only other way for a noncitizen to seek review of a denial of adjustment of status is in the context of a removal proceeding.  If the government seeks removal of a noncitizen from the United States, the noncitizen can move for adjustment of status before the immigration judge in the removal proceeding.  8 C.F.R. § 1245.2(a)(1).  If the immigration judge denies the request for adjustment of status and enters an order of removal, the noncitizen can seek further review from the Board of Immigration Appeals, and then by petitioning for review of the removal order in the appropriate United States court of appeals.  *See* 8 U.S.C. § 1252(a)(5); 8 C.F.R. § 1003.1(b)(3).

Against this backdrop, the INA limits the role that federal courts may play in reviewing decisions by the executive branch regarding requests for adjustment of status.  Section

---

[2]    Although § 1255 states that the relevant decisionmaker is "the Attorney General," Congress has transferred that authority to the Secretary of Homeland Security, who in turn has delegated it to USCIS.  *See Meza v. Renaud*, 9 F.4th 930, 932 (D.C. Cir. 2021) (noting this reassignment of statutory authority).

1252(a)(2)(B)(i) of the INA pertains to "[d]enials of discretionary relief," and provides in relevant part:

> Notwithstanding any other provision of law . . . and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review — (i) any judgment regarding the granting of relief under section . . . 1255 of this title . . . .

8 U.S.C. § 1252(a)(2)(B)(i). The statute strips federal courts of jurisdiction to review "any judgment" related to adjustment of status under § 1255, subject to an exception that allows review of "constitutional claims or questions of law" made in removal proceedings. *See* 8 U.S.C. § 1252(a)(2)(D) ("Nothing in subparagraph (B) . . . or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section."); *Lee v. USCIS*, 592 F.3d 612, 620 (4th Cir. 2010) ("[Section] 1252(a)(2)(D), by its express terms, applies only in the context of removal proceedings."); *Hamilton v. Gonzales*, 485 F.3d 564, 566 (10th Cir. 2007) ("[A] final order of removal is a prerequisite to the application of § 1252(a)(2)(D).").

### b. *Factual and Procedural History*

Dr. Abuzeid, a dual citizen of the United Kingdom and Saudi Arabia, came to the United States on a J-1 visa to receive graduate medical education. *See* Am. Compl., ¶¶ 1, 19. His wife and co-appellant, Melissa Anne Abuzeid, is a U.S. citizen, and the couple live in South Carolina. *See id.*, ¶ 2. Dr. Abuzeid

asserts that he has departed the United States and returned to the United Kingdom and Saudi Arabia multiple times since the completion of his training, spending more than two years (at least 806 days) in the two countries. *See id.*, ¶¶ 22–23.

Dr. Abuzeid has twice applied to adjust his status to that of a permanent resident. The first application was made in conjunction with a request for an immigrant visa based on his employment. *See id.*, ¶ 26; *see also* 8 U.S.C. § 1153(b)(2) (allowing visas for noncitizens "who are members of the professions holding advanced degrees or [noncitizens] of exceptional ability"). Dr. Abuzeid's second application, submitted while this case was pending in the district court, was made along with a request for an immigrant visa based on his marriage to a U.S. citizen. *See* Am. Compl., ¶ 164; *see also* 8 U.S.C. §§ 1151(b)(2)(A)(i), 1204 (allowing visas for noncitizens who are spouses of U.S. citizens).

USCIS denied both applications for the same reason: Dr. Abuzeid's failure to establish that he spent an aggregate of at least two years after his training "resid[ing] . . . and physically present in the country of his nationality or his last residence," as required by 8 U.S.C. § 1182(e). *See* Denial of Employment-Based Application 7; Denial of Family-Based Application 3. Specifically, the agency determined that Dr. Abuzeid was ineligible for adjustment of status because he did not demonstrate that he spent the mandated two years in the United Kingdom, his last country of residence. Dr. Abuzeid argued that he should be allowed to combine the time he spent in Saudi Arabia and the United Kingdom to satisfy the residency requirement. He contended that, as a dual citizen, he should be permitted to claim both the United Kingdom and Saudi Arabia as his "country of nationality" under the statute. The agency disagreed. *See* Denial of Employment-Based Application 7 ("[T]ime spent in Saudi Arabia cannot be counted toward the

fulfillment toward your two-year residency requirement."); Denial of Family-Based Application 2 (similar). Moreover, the agency also concluded that Dr. Abuzeid had not submitted enough evidence to show that he had resided and been physically present in the United Kingdom for all the time that he claimed. USCIS therefore denied his applications.

In response, Dr. Abuzeid and his wife filed a lawsuit in the district court against the Secretary of Homeland Security and various other officials tasked with implementing the immigration statutes (collectively, "the government"). Appellants asserted that the denials of Dr. Abuzeid's applications were arbitrary and capricious, an abuse of discretion, and contrary to law, in violation of the APA. *See* Am. Compl., ¶¶ 8, 183–86.[3] They sought a declaratory judgment that the adjudications were unlawful, that Dr. Abuzeid is eligible for adjustment of status, and that his applications should be approved. Appellants also asked the district court to order USCIS to approve his adjustment of status.

The government moved to dismiss the amended complaint for lack of subject-matter jurisdiction under § 1252(a)(2)(B)(i). The government argued that "judicial review of the denial[s] is not available pursuant to the express terms of 8 U.S.C. § 1252(a)(2)(B)(i)." Mem. Supp. Mot. to Dismiss 5.

---

[3] The Amended Complaint also alleges a due process violation. *See* Am. Compl., ¶¶ 188–89. But appellants never explain what additional process was due, as is required to bring a procedural due process claim, *see Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25, 31 (D.C. Cir. 2014), nor what fundamental right they were deprived of, as is required for a substantive due process claim, *see Abigail All. for Better Access to Dev. Drugs v. von Eschenbach*, 495 F.3d 695, 702 (D.C. Cir. 2007) (en banc). Accordingly, they have not raised a colorable constitutional claim.

The district court agreed and granted the motion to dismiss. *See Abuzeid v. Wolf*, No. 1:18-cv-382 (TJK), 2020 WL 7629664 (D.D.C. Dec. 22, 2020). The court held that § 1252(a)(2)(B)(i) "bars judicial review of [USCIS's] decisions denying Dr. Abuzeid's adjustment of status applications." *Id.* at *1.

After appellants filed their notice of appeal, we held the case in abeyance pending the Supreme Court's decision in *Patel v. Garland*, 142 S. Ct. 1614 (2022). *Patel* has now been decided. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.     Standard of Review

We review the district court's interpretation of § 1252(a)(2)(B) *de novo*. *See iTech U.S., Inc. v. Renaud*, 5 F.4th 59, 62 (D.C. Cir. 2021). Upon consideration of a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, "[w]e assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff[s] the benefit of all inferences that can be derived from the facts alleged,' and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

## III.     Analysis

The district court correctly held that it lacked jurisdiction to review appellants' claims that USCIS violated the APA in denying Dr. Abuzeid's applications for adjustment of status. District courts have federal-question jurisdiction over APA cases unless such review is precluded by a separate statute. *See Califano v. Sanders*, 430 U.S. 99, 105–09 (1977). Here, § 1252(a)(2)(B)(i) provides that "no court shall have jurisdiction to review . . . any judgment regarding the granting

of relief under section . . . 1255 of this title." Dr. Abuzeid requested adjustment of status under § 1255. Consideration of appellants' APA claim is foreclosed by a straightforward application of § 1252(a)(2)(B)(i) and the Supreme Court's decision in *Patel*, 142 S. Ct. 1614.

*Patel* considered whether § 1252(a)(2)(B)(i) precluded judicial review of a factual finding by an immigration judge in a removal proceeding — a finding that made Patel ineligible for discretionary adjustment to lawful-permanent-resident status. *Id.* at 1619–20. The Supreme Court ruled that federal courts lack jurisdiction to consider "any authoritative decision" by USCIS that applies § 1255 and other enumerated provisions, noting that § 1252(a)(2)(B)(i) "does not restrict itself to certain kinds of decisions. Rather, it prohibits review of *any* judgment *regarding* the granting of relief" under those provisions. *Id.* at 1621–22 (emphasis in original). The Court emphasized that the word "'any' means that the provision applies to judgments 'of whatever kind' under § 1255, not just discretionary judgments or the last-in-time judgment." *Id.* at 1622 (quoting Webster's Third New International Dictionary, at 97). In so holding, the Court explicitly rejected the argument that the word "judgment" refers exclusively to a "discretionary decision" that is "subjective or evaluative," *id.* at 1623, forcefully stating that "[a] 'judgment' does not necessarily involve discretion, nor does context indicate that only discretionary judgments are covered by § 1252(a)(2)(B)(i)[,]" *id.* at 1625.

Here, appellants argue that USCIS based its denial of Dr. Abuzeid's applications for adjustment of status on a "nondiscretionary eligibility decision," concerning whether he could aggregate the days that he spent in his two countries of nationality to satisfy the residency requirement. Appellants' Br. 14. According to appellants, although "the ultimate

exercise of discretion may be unreviewable, the issue of eligibility is a question of law that is subject to review." *Id*. But under *Patel*, the agency's determination that Dr. Abuzeid was ineligible for adjustment of status was a "judgment *regarding* the granting of relief" under § 1255, which a federal district court may not consider. 142 S. Ct. at 1622 (emphasis in original). *Patel* precludes review of all kinds of agency decisions that result in the denial of relief — whether they be discretionary or nondiscretionary, legal or factual. *See id.* (holding that § 1252(a)(2)(B)(i) "does not restrict itself to certain kinds of decisions"). Thus, § 1252(a)(2)(B)(i), as interpreted in *Patel*, squarely applies to this case: The statute stripped the district court of subject-matter jurisdiction over appellants' claims under the APA.[4]

To avoid the dismissal of their case, appellants seek to confine *Patel*'s holding to petitions for review of removal orders. *See* Appellants' Br. 18–19. Although *Patel* addressed a judgment made in a removal proceeding before an immigration judge, and reserved ruling on whether

---

[4]    Appellants' claim that the instant judgment involved a question of law overlooks USCIS's alternative factual finding that Dr. Abuzeid did not submit sufficient evidence to prove the amount of time he claimed to have spent in the United Kingdom. To the extent that the agency relied on that unreviewable factual determination, this case is essentially indistinguishable from *Patel*. Moreover, the various pre-*Patel* circuit court decisions cited by appellants are unpersuasive. Those cases turned on the alleged difference between discretionary and nondiscretionary determinations that *Patel* rejected. *See Melendez v. McAleenan*, 928 F.3d 425, 426–27 (5th Cir. 2019); *Abdelwahab v. Frazier*, 578 F.3d 817, 821 (8th Cir. 2009); *Pinho v. Gonzales*, 432 F.3d 193, 203 (3d Cir. 2005); *Sepulveda v. Gonzales*, 407 F.3d 59, 63 (2d Cir. 2005) (Sotomayor, J.); *see also Hosseini v. Johnson*, 826 F.3d 354, 358–59 (6th Cir. 2016) (not cited by appellants).

§ 1252(a)(2)(B)(i) bars review of analogous judgments by USCIS that are challenged under the APA in a federal court, *see* 142 S. Ct. at 1626, we see no basis for the distinction that appellants attempt to draw. Section 1252(a)(2)(B) specifically provides that the relevant jurisdiction-stripping language applies "*regardless* of whether the judgment, decision, or action is made in removal proceedings." 8 U.S.C. § 1252(a)(2)(B) (emphasis added). The "regardless" clause "makes clear that the jurisdictional limitations imposed by § 1252(a)(2)(B) also apply to review of agency decisions made outside of the removal context." *Lee v. USCIS*, 592 F.3d 612, 619 (4th Cir. 2010); *see also Britkovyy v. Mayorkas*, __ F.4th __, No. 21-3160, 2023 WL 2059090, at *4 (7th Cir. Feb. 17, 2023) (relying on *Patel* and the "regardless" clause to hold that district courts lack jurisdiction under § 1252(a)(2)(B)(i) to review denials of adjustment of status that are challenged under the APA).

Appellants make two arguments to avoid the plain meaning of the "regardless" clause. We need not consider these arguments because they either were entirely absent from appellants' opening brief or, at best, were mentioned in only "the most skeletal way," and thus have been forfeited. *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005). In any event, neither argument is persuasive. First, appellants contend that we should apply § 1252 only in removal proceedings because the title of the statute is "Judicial Review of *Orders of Removal*." Appellants' Reply Br. 3 (emphasis added). But "when a statute is unambiguous, its title cannot be used to limit the plain meaning of the text." *Murphy Expl. & Prod. Co. v. U.S. Dep't of Interior*, 252 F.3d 473, 481 (D.C. Cir. 2001) (cleaned up). Appellants point to no ambiguity in the "regardless" clause, and we discern none. *Cf. iTech*, 5 F.4th

at 65 (rejecting argument that § 1252(a)(2)(B)'s subsection heading limits the plain meaning of subparagraph (B)(ii)).[5]

Second, appellants note that § 1252(a)(2)(B)(i) applies only to decisions "regarding the granting of *relief*." Appellants' Reply Br. 4 (emphasis in original). Appellants assert that this refers to relief from removal, and not any other kind of relief. *See id.* We reject that interpretation because it creates an untenable contradiction: The jurisdictional limitation cannot apply only in cases involving relief from removal proceedings, while at the same time operate "regardless of whether the judgment, decision, or action is made in removal proceedings." *See Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 824 (2018) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)).

Finally, appellants fall back on the presumption of judicial reviewability. They note that in *Kucana v. Holder*, 558 U.S. 233 (2010), the Supreme Court explained that "clear and convincing evidence" of Congress's intent is required to

---

[5]  The discrepancy between the title of § 1252 and the substance of § 1252(a)(2)(B) is easily explained. The former originated in the Illegal Immigration Reform and Immigration Responsibility Act of 1996. *See* Pub. L. No. 104-208, div. C, § 306,  110 Stat. 3009-546, 3009-607 (1996). The "regardless" clause was added nine years later, in the REAL ID Act of 2005. *See* Pub. L. No. 109-13, div. B, § 101(f)(2), 119 Stat. 302, 305 (2005); *see also Mejia Rodriguez v. U.S. Dep't of Homeland Sec.*, 562 F.3d 1137, 1142 n.13 (11th Cir. 2009) (explaining that Congress added the "regardless" clause "presumably to resolve a disagreement between some of [the] circuits and district courts as to whether § 1252(a)(2)(B) applied outside the context of removal proceedings"). It appears that Congress simply neglected to amend the title of the statute to account for the new provision that it added.

overcome the ordinary presumption that administrative actions are subject to judicial review, *id.* at 252 (citing *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 63–64 (1993)); and they further argue that the "clear and convincing" standard is not met here because *Patel* stands only for the proposition that "Congress *may* have intended to foreclose judicial review outside of removal proceedings." Appellants' Reply Br. 5 (emphasis in original). We think that the plain and unequivocal language in § 1252(a)(2)(B)(i) is clear and convincing evidence of Congress's intent to strictly circumscribe the jurisdiction of federal courts over cases involving the adjustment of immigration status. Moreover, the holding in *Patel* illustrates that in the Supreme Court's view, Congress's intent in enacting § 1252(a)(2)(B)(i) was sufficiently clear to overcome any presumption of judicial review, at least with respect to a judgment made in a removal proceeding. *See* 142 S. Ct. at 1627. Discerning no basis to treat APA claims in this context differently from claims raised in removal proceedings, we believe that *Patel* compels the same result here. *See Britkovyy*, 2023 WL 2059090, at \*4–5 (rejecting presumption-of-reviewability argument in analogous case brought under the APA).

We recognize that our interpretation of § 1252(a)(2)(B)(i) leaves no path for judicial review of denials of adjustment of status by USCIS. That result is dictated by the plain meaning of the statute and by the reasoning of *Patel*. The only remaining avenue for relief from a denial of adjustment of status is provided by § 1252(a)(2)(D), which allows review of "constitutional claims or questions of law" raised in removal proceedings, "upon a petition for review [of a final order of removal] filed with an appropriate court of appeals." 8 U.S.C. § 1252(a)(2)(D). The Supreme Court acknowledged in *Patel* that its analysis might well lead to this outcome. *See Patel*, 142 S. Ct. at 1626 ("If the jurisdictional bar is broad and

14

subparagraph (D) is inapplicable [because it applies only in removal proceedings], Patel and the Government say, USCIS decisions will be wholly insulated from judicial review."). But the Court stated that "it is possible that Congress did, in fact, intend to close that door[,]" and further observed that "foreclosing judicial review unless and until removal proceedings are initiated would be consistent with Congress'[s] choice to reduce procedural protections in the context of discretionary relief." *Id.* at 1626–27. Despite understanding that its ruling might lead to the insulation of USCIS decisions from judicial review, the Court declined to interpret the statute to avoid that very consequence, stating that "policy concerns cannot trump the best interpretation of the statutory text." *Id.* at 1627.[6] Thus, although the Supreme Court avoided deciding in *Patel* whether § 1252(a)(2)(B)(i) precludes the review of decisions by USCIS to deny adjustments of status, the Court nevertheless considered the implications of its ruling for such

---

[6] We note that a year before deciding *Patel*, the Supreme Court ruled on the merits of a case in which a noncitizen challenged the denial of his application for adjustment of status by USCIS, by filing a lawsuit in a federal district court under the APA. *See Sanchez v. Mayorkas*, 141 S. Ct. 1809 (2021). The Court did not mention or discuss § 1252(a)(2)(B)(i) in *Sanchez*. Although the *Sanchez* opinion appears to assume that the federal courts had jurisdiction to consider the APA claim at issue, appellants do not cite *Sanchez* and therefore forfeit any argument based on that case. *See Scenic Am., Inc. v. U.S. Dep't of Transp.*, 836 F.3d 42, 53 n.4 (D.C. Cir. 2016) ("Although a party cannot forfeit a claim that we lack jurisdiction, it can forfeit a claim that we possess jurisdiction." (citation omitted)). In any event, "when a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed." *Schindler Elevator Corp. v. WMATA*, 16 F.4th 294, 299 (D.C. Cir. 2021) (alteration omitted) (quoting *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144 (2011)). Thus, the holding of *Sanchez* does not contradict our analysis.

cases and made clear that "the best interpretation of the statutory text" should govern. *Id.*[7]

**IV.     Conclusion**

The district court correctly dismissed appellants' case for lack of subject-matter jurisdiction. Based on the plain meaning of § 1252(a)(2)(B)(i), and the reasoning of *Patel v. Garland*, 142 S. Ct. 1614, USCIS's decision to deny Dr. Abuzeid's application for adjustment of status is unreviewable by a federal district court. Accordingly, we affirm.

*So ordered.*

---

[7]     We note that Dr. Abuzeid still has options that might allow him to receive permanent-resident status, even if he cannot seek review of USCIS's decisions in a United States district court and even if the government does not begin removal proceedings against him. Dr. Abuzeid can re-submit his application for adjustment of status after spending the requisite amount of time in the United Kingdom, or he can seek a waiver of the residency requirement. *See* 8 U.S.C. § 1182(e).