**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 21-2010**

———————

SALEH SHAIBAN,

Plaintiff - Appellant,

v.

UR M. JADDOU, Director of U.S. Citizenship and Immigration Services;
ALEJANDRO N. MAYORKAS, Secretary of Homeland Security; UNITED
STATES DEPARTMENT OF HOMELAND SECURITY,

Defendants - Appellees.

———————

Appeal from the United States District Court for the Western District of North Carolina, at
Charlotte.  Frank D. Whitney, District Judge.  (3:18-cv-00153-FDW-DCK)

———————

Argued:  December 6, 2023                           Decided:  April 3, 2024

———————

Before GREGORY and HARRIS, Circuit Judges, and FLOYD, Senior Circuit Judge.

———————

Dismissed by published opinion   Senior Judge Floyd wrote the opinion in which Judge
Gregory and Judge Harris joined.

———————

**ARGUED:** Eric Hisey, GOLDBERG & ASSOCIATES, Bronx, New York, for Appellant.
Alexander Halaska, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.,
for Appellees. **ON BRIEF:** Julie A. Goldberg, GOLDBERG & ASSOCIATES, Bronx,
New York, for Appellant.  Brian M. Boynton, Principal Deputy Assistant Attorney
General, William C. Peachey, Director, Yamileth G. Davila, Assistant Director, District

Court Section, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

_____

FLOYD, Senior Circuit Judge:

Saleh Shaiban is a citizen and national of Yemen who entered the United States in 1999 on a false passport and B-2 visitor visa. After an Immigration Judge ("IJ") eventually granted him asylum in 2006, Shaiban submitted an application for adjustment of status to U.S. Citizenship and Immigration Services ("USCIS"). USCIS denied his application because it deemed him ineligible on terrorism grounds.

We conclude that we have no jurisdiction over Shaiban's appeal and must dismiss it for lack of jurisdiction.

I.

Shaiban, a Yemeni national, applied for asylum in December 2000. Immigration and Naturalization Services ("INS") issued a Notice to Appear in removal proceedings before an IJ within the Executive Office for Immigration Review ("EOIR"). On October 11, 2001, the IJ ordered the Department of State's embassy in Yemen to complete a consular investigation into Shaiban's nationality and identity. JA 180-81. Shaiban appeared at removal proceedings, and in February 2002, the IJ denied his application for asylum. JA 227–38 (transcript of IJ's oral decision).

Shaiban appealed the decision to the Board of Immigration Appeals ("BIA") and the appeal was dismissed in February 2003. Shaiban then appealed to the U.S. Court of Appeals for the Second Circuit, which remanded the case to a new IJ for a *de novo* hearing. On remand, the IJ granted him asylum. Years later in November 2008, Shaiban submitted

3

an application for permanent residence to USCIS, also called an Application to Register Permanent Residence or Adjust Status. In September of 2013, USCIS informed Shaiban that his case had been put on hold because he appeared to be "inadmissible pursuant to the terrorist-related grounds of inadmissibility" under Section 212(a)(3)(B) of the Immigration and Nationality Act. JA 131.

In January 2018, USCIS sent Shaiban a request for additional evidence related to his application. JA 133-35. USCIS explained that in his 2000 asylum application and 2001 and 2002 immigration proceedings, Shaiban disclosed he was a member of the Yemeni Socialist Party, that he actively fought in Yemen's civil war in 1994, and that he had been imprisoned in Yemen during the war. However, in his application for permanent residence, Shaiban failed to disclose that information. USCIS requested information to resolve discrepancies in his identification information and his participation in organizations. JA 134. After the January request for additional evidence, Shaiban filed suit under the Administrative Procedures Act ("APA") in the Western District of North Carolina to compel adjudication of his application for permanent residence. In July 2018, USCIS sent Shaiban a Notice of Intent to Deny his application because they believed he was ineligible for adjustment of status because his participation in certain Yemeni organizations qualified as terrorist activities.

A month later, USCIS sent Shaiban a letter denying his application on the same grounds set forth in its July 2018 Notice of Intent to Deny. In July 2021, the district court granted the government's motion for summary judgment. Shaiban argued the government

4

was collaterally estopped from denying his application because his previous grant of asylum had already determined the terrorism bar did not apply.  The court rejected Shaiban's argument because it found the record of the 2002 asylum hearing did not indicate whether the issue of terrorist activities was "actually litigated."  JA 271.

Shaiban asks us to review the district court's grant of summary judgment and decision to deny the expansion of the administrative record to include the transcript of the 2006 asylum proceedings.  After oral argument, this Court issued an order for supplemental briefing on whether we had jurisdiction to review Shaiban's requests.  We now decline to issue a decision on the merits of Shaiban's case because we lack jurisdiction to hear it.

II.

A.

Federal courts have an independent duty to confirm their own jurisdiction even when, as here, it initially went unquestioned by the parties.  *See Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 187 (4th Cir. 2019).  We determine *de novo* whether we have jurisdiction. *Kouambo v. Barr*, 943 F.3d 205, 209 (4th Cir. 2019).

After a foreign national has been granted asylum and has been physically present in the United States for one year, they may apply to USCIS for adjustment of status to become a lawful permanent resident.  8 U.S.C. § 1159(b)(2).  The decision whether to adjust the status of a noncitizen granted asylum to that of a lawful permanent resident lies in the discretion of the Secretary of Homeland Security ("Secretary") and the Attorney General

5

of the United States. *Id.*

In immigration cases, Congress has prescribed when courts of appeals have jurisdiction to review claims from noncitizens. Therefore, we look to 8 U.S.C. § 1252, the provision that identifies when we have judicial review of final orders of removal, to determine whether we have jurisdiction to review Shaiban's case. Section 1252(a)(2)(B) provides "[n]otwithstanding any other provision of law (statutory or nonstatutory), . . . and regardless of whether the . . . decision . . . is made in removal proceedings, no court shall have jurisdiction to review . . . any other decision or action of . . . the Secretary of Homeland Security the authority for which is specified under this subchapter to be in [their] discretion." 8 U.S.C. § 1252(a)(2)(B)(ii).* Because § 1252(a)(2)(B)(i) strips courts of jurisdiction to review enumerated relief that does not apply in this case, we look to (ii).

First, we consider whether § 1252(a)(2)(B)(ii) strips this Court of jurisdiction to review the denial of relief Shaiban requests, adjustment of status under 8 U.S.C. § 1159(b). When we interpret statutes, our starting point is the text of the statute itself. *Cela v. Garland*, 75 F.4th 355, 364 (4th Cir. 2023). Where the statutory language provides "a clear answer, [our inquiry], ends there." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438

---

* Section 1252(a)(2)(D) contains a single exception that allows review of constitutional claims and questions of law raised in a petition for review of a final removal order. *See Lee v. USCIS*, 592 F.3d 612, 620 (4th Cir. 2010) ("To the extent Congress decided to permit judicial review of a constitutional or legal issue bearing upon the denial of adjustment of status, it intended for the issue to be raised to the court of appeals during removal proceedings"). However, because Shaiban is not in removal proceedings and not asking this Court to review a final removal order, that exception is not applicable here.

(1999). And "no amount of policy-talk can overcome . . . plain statutory" text. *Niz-Chavez v. Garland*, 593 U.S. 155, 171 (2021). The most straightforward reading of both the statute and recent guidance from the Supreme Court in *Patel v. Garland*, 596 U.S. 328 (2022), lead us to find Congress did not intend for us to review Shaiban's claim.

We address the relevant statutes first. Section 1252(a)(2)(B)(ii) tells us we cannot review "any other decision" "the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." Therefore, the question is whether the decision to adjust (or deny adjustment of) Shaiban's status is in the discretion of the Attorney General or Secretary. Here, § 1159(b), the statute that lays out the requirements to adjust status, gives us our answer. Section 1159(b) states that "[t]he Secretary of Homeland Security or the Attorney General" "*may* adjust [] the status of" a foreign national granted asylum "in the Secretary's or the Attorney General's discretion." Section 1252(a)(2)(B)(ii) provides that we do not have jurisdiction over decisions the authority for which is specified to be in the discretion of the Attorney General. Section 1159(b) is explicit that it is in the discretion of the Attorney General whether to grant an adjustment of status. Therefore, a plain reading of the statutes leads us to conclude Congress did not intend judicial review of a claim like Shaiban's.

*Patel v. Garland* supports this reading of the statutes. 596 U.S. 328 (2022). In *Patel v. Garland*, the petitioner applied to USCIS for an adjustment of status under 8 U.S.C. § 1255(i), one of the enumerated provisions that placed it within the province of § 1252(a)(2)(B)(i), which similarly strips courts of jurisdiction to consider such judgments.

7

While his application was pending, petitioner checked a box on a driver's license application indicating he was a U.S. citizen. USCIS denied his application because it determined he falsely represented himself to be a citizen. The IJ, during removal proceedings, concluded petitioner's testimony was not credible and denied his petition to adjust status. On appeal, the Eleventh Circuit held that § 1252(a)(2)(B)(i) precluded review of the IJ's factual determination regarding credibility. *Patel v. United States Att'y Gen.*, 971 F.3d 1258 (11th Cir. 2020).

As explained in *Patel*, § 1252(a)(2)(B)(i) bars review of "any judgment regarding the granting of relief under" the specified provisions. *Patel*, 596 U.S. at 333. The Supreme Court held "judgment" means "any authoritative decision." *Id.* at 337. It held the jurisdictional bar encompasses "any and all decisions relating to the granting or denying of discretionary relief," including "factual findings," within § 1252(a)(2)(B)(i)'s jurisdiction-stripping language. *Id.* (cleaned up). The Supreme Court explained the word "any" has an expansive meaning, and "regarding" likewise has a "broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." *Id.* at 339 (cleaned up). Accordingly, the Supreme Court held that a petitioner in active removal proceedings may not seek judicial review of the fact finding underlying an agency's previous judgment pursuant to § 1255. *Id.*

While *Patel v. Garland* is instructive, it does not conclusively resolve this exact issue. *Patel* interpreted § 1252(a)(2)(B)(i), and not § 1252(a)(2)(B)(ii). Further, *Patel* dealt with a case in removal proceedings and explicitly declined to resolve the question

8

presented here, which is a decision made outside the removal context. *See id.* at 345 ("Those decisions are made outside of the removal context . . . . The reviewability of such decisions is not before us, and we do not decide it."). However, the Supreme Court, in dicta, suggested that Congress may have "intend[ed] to close that door" on such review through § 1252(a)(2)(B), and thus "foreclosing judicial review unless and until removal proceedings are initiated would be consistent with Congress' choice to reduce procedural protections in the context of discretionary relief." *Id.*

This case has two complexities not presented in *Patel*. Therefore, we must ask: (1) does *Patel* apply outside the removal context, and (2) does the broad construction of "judgment" in subclause (i) also apply with equal force to "any other decision or action" under subclause (ii)?

As noted above, the Supreme Court has signaled the answer to the first question is yes. Any other conclusion is difficult to square with the language of the beginning of § 1252(a)(2)(B), which states courts shall not have the jurisdiction to hear cases enumerated in subclauses (i) and (ii) "regardless of whether the judgment, decision, or action is made in removal proceedings." While *Patel* did not conclusively resolve the issue, we find the dicta persuasive and are unable to find a contrary reading that squares with the plain meaning of statutes and Supreme Court precedent.

As to the second question, this Court is unable to identify any basis for concluding that *Patel*'s broad construction of clause (i) should not equally apply to clause (ii) of § 1252(a)(2)(B). This is because subclause (ii) acts as a catchall provision of subclause (i).

9

*See, e.g.*, *Kucana v. Holder*, 558 U.S. 233, 246 (2010) ("To the clause (i) enumeration of administrative judgments that are insulated from judicial review, Congress added in clause (ii) a catchall provision . . . ."). Further, the Supreme Court in *Kucana* stated "[t]he proximity of clauses (i) and (ii), and the words linking them —'any other decision'— suggests that Congress had in mind decisions of the same genre, *i.e.*, those made discretionary by legislation." *Id.* at 246–47. A plain reading of the statute shows that (ii) is a catchall provision, and it would make little sense that (ii) would be narrower than (i).

Shaiban argues this case is not subject to § 1252(a)(2)(B)'s jurisdiction-stripping language because USCIS's inquiry into the adjustment of status under § 1159(b) involves a nondiscretionary decision since someone who has been deemed to be engaged in terrorist activity under 8 U.S.C. § 1182 is ineligible for an adjustment of status. In short, Shaiban argues that because the denial of adjustment of status is nondiscretionary in these circumstances, the strip of jurisdiction regarding discretionary decisions of the Secretary does not affect judicial review here, where the underlying decision was nondiscretionary. However, the plain words of § 1252(a)(2)(B)(ii) show Congress intended to strip courts of jurisdiction to review "decisions that are statutorily specified to be in the discretion of the Attorney General or the Secretary of Homeland Security." *Patel*, 971 F.3d at 1272. In determining whether Shaiban engaged in terrorist activity, USCIS was acting under the authority contained in § 1159(b), which is defined as discretionary. The most logical and straightforward application of *Patel v. Garland* and the relevant statutes lead us to hold we are without jurisdiction to hear Shaiban's appeal.

B.

A closer question, we believe, is whether *Moore v. Frazier*, 941 F.3d 717 (4th Cir. 2019), provides otherwise.  We find *Moore* does not give us a route to jurisdiction.

In *Moore v. Frazier*, we held the district court had jurisdiction to consider petitioner's claim.  Specifically, we held § 1252(a)(2)(B)(ii) did not bar judicial review of petitioner's claim that USCIS applied the incorrect statute in adjudicating Moore's I-130 Petition for Alien Relative, which is the first step in reclassifying a noncitizen's immigration status based on a familial relationship to a U.S. citizen.  *Id.* at 719–20.  We held that § 1252(a)(2)(B)(ii)'s jurisdiction-stripping language did not apply because the Moores were not challenging *how* the agency exercised its discretion, subjecting their claim to (ii), but instead were challenging which version of the statute Congress intended the agency to use when adjudicating the petition.  *Id.* at 724 n.6.  In making this distinction, we stated that "Congress did not designate to USCIS's discretion the decision of which version of § 1154 would apply to I-130 Petitions pending at the time the Adam Walsh Act amendments were adopted."  *Id.* at 723.  Because that inquiry is entirely separate from other discretionary decisions and involves a question of USCIS's statutory authority, (ii) did not strip us of jurisdiction in Moore's case.

Shaiban nonetheless argues that § 1252(a)(2)(B)(ii) does not apply because he raises only questions of law in this appeal, namely whether USCIS was collaterally estopped from considering the terrorism bar.  Here, USCIS under § 1159(b) applied a fact-bound estoppel

11

determination, which was subject to the overarching discretionary determination. This is distinct from the question in *Moore* over the inherent legal question of the applicability of the correct version of a statute.

Further, as this Court has recently recognized in an unpublished decision, *Patel* clarified how we view § 1252(a)(2)(B). *See Uvalle v. Garland*, No. 21-2418, 2023 WL 2446717, at *3 (4th Cir. Mar. 10, 2023). The remaining avenue for Shaiban for his adjudication of his denial of adjustment of status is provided in § 1252(a)(2)(D), which allows review of "constitutional claims or questions of law" raised in removal proceedings, "upon a petition for review [of a final order of removal] filed with an appropriate court of appeals." § 1252(a)(2)(D). As *Patel* foreshadowed, some courts have used its analysis to close the door on adjustment of status review outside of the removal context. *See, e.g.*, *Abuzeid v. Mayorkas*, 62 F.4th 578, 586 (D.C. Cir. 2023).

While there are valid public policy arguments to maintain judicial review of Shaiban's claims and others that petitioners in similar situations may raise, "policy concerns cannot trump the best interpretation of the statutory text." *Patel*, 596 U.S. at 346.

Based on the plain meaning of § 1252(a)(2)(B)(ii), and the reasoning of *Patel v. Garland*, we do not have jurisdiction to review Shaiban's claim and therefore dismiss his appeal.

*DISMISSED*

12