RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0146p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

MIKE GOVENDER HATCHET,

                    *Plaintiff-Appellant*,

    *v.*

DANIEL W. ANDRADE, Director of Nashville Field
Office of U.S. Citizenship and Immigration Services;
ALEJANDRO MAYORKAS, Secretary of U.S.
Department of Homeland Security; UR MENDOZA
JADDOU, Director, U.S. Citizenship and Immigration
Services,

                    *Defendants-Appellees*.

No. 23-5920

> Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
> No. 3:20-cv-00693—William Lynn Campbell, Jr., District Judge.

Decided and Filed:  July 3, 2024

Before:  MOORE, MURPHY, and BLOOMEKATZ, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:**  Andrew P. Goldstein, Samuel S. Shirley, COLE LAW GROUP, P.C., Brentwood, Tennessee, for Appellant.  Michael D. Ross, Katherine J. Shinners, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge. Mike Govender Hatchet sought, on numerous occasions, an adjustment of his immigration status to that of lawful permanent

resident.  To do so, he applied for such discretionary relief, which was adjudicated by the United States Citizenship and Immigration Services ("USCIS").  USCIS denied each of Hatchet's applications, relying on facts that it found rendered Hatchet ineligible for discretionary relief.  Eventually, Hatchet challenged the agency's actions in federal district court, claiming, in effect, that the agency relied on facts clearly at odds with the record.  But because Congress has stripped us of our ability to review such claims concerned with the facts found during discretionary-relief proceedings, we AFFIRM the district court's dismissal for lack of subject-matter jurisdiction.

## I.  BACKGROUND

### A.  Adjustment of Status

The Immigration and Nationality Act ("INA") provides various mechanisms for noncitizens to gain lawful permanent residence.  *See, e.g.*, *Lockhart v. Napolitano*, 573 F.3d 251, 254 (6th Cir. 2009).  Relevant here, 8 U.S.C. § 1255(a) sets forth statutory criteria that a noncitizen must satisfy in order to be eligible for an adjustment of status to lawful permanent resident:

> The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

One way that an immigrant visa may be "immediately available" to a noncitizen is through a familial relationship to a citizen, such as a spousal relationship.  *See* 8 U.S.C. §§ 1151(b)(2)(A)(i) (defining "immediate relatives"), 1154(a)(1)(A) (explaining the petitioning process for immediate relatives).  Under § 1154(a)(1)(A)(i), the immediate relative of the noncitizen must file a Form I-130 to petition on behalf of the noncitizen.  *Lockhart*, 573 F.3d at 254; 8 C.F.R. § 204.1(a)(1).  USCIS then investigates the petition and approves it if the petition establishes that the noncitizen is an immediate relative of a citizen.  *Lockhart*, 573 F.3d at 254.

At that point, an immigrant visa is immediately available to the noncitizen, and they are ready to apply for adjustment of status for lawful permanent residence.  *Id.*  To apply for an

adjustment of status, the noncitizen must file a Form I-485.  8 C.F.R. § 245.2(a)(3)(ii).  If the noncitizen applies for an adjustment of status while in removal proceedings, an immigration judge considers the application.  *Id.* § 1245.2(a)(1)(i).  By contrast, if a noncitizen applies for an adjustment of status outside of the removal context, USCIS considers the application.  *Id.* § 1245.2(a)(1).

A properly filed Form I-485 is then considered under "a two-step process."  *Lockhart*, 573 F.3d at 254.  First, the adjudicator considers whether the applying noncitizen has proven that they are statutorily eligible for an adjustment of status.  *Id.*; 8 U.S.C. § 1255(a) (a noncitizen must be "admissible . . . for permanent residence").  The noncitizen bears the burden of proving that they are both admissible, and, by the same token, not inadmissible.  *See, e.g.*, *Ferrans v. Holder*, 612 F.3d 528, 531 (6th Cir. 2010).  One manner in which a noncitizen may be statutorily inadmissible is if the adjudicator finds that the noncitizen has made certain misrepresentations.  *See* 8 U.S.C. § 1182(a)(6)(C)(i) (misrepresentations of material fact in connection with obtaining certain documents or admission), 1182(a)(6)(C)(ii)(I) (misrepresenting oneself as a United States citizen).

Second, the adjudicator must exercise their discretion to adjust the noncitizen's status, even if the noncitizen is statutorily admissible.  *Lockhart*, 573 F.3d at 254.  That is, even if the noncitizen is statutorily eligible for adjustment of status, the adjudicator may still deny relief if the adjudicator finds that the noncitizen does not "merit[] a favorable exercise of agency discretion."  *Matovski v. Gonzales*, 492 F.3d 722, 739 (6th Cir. 2007); *see also I.N.S. v. St. Cyr*, 533 U.S. 289, 307–08 (2001) (explaining the difference between eligibility for discretionary relief and the actual exercise of discretion to grant relief), *superseded by statute on other grounds*.  Such exercise of discretion is "always 'a matter of grace'" regardless of statutory eligibility for relief.  *Patel v. Garland*, 596 U.S. 328, 332 (2022) (quoting *St. Cyr*, 533 U.S. at 308).

## B.  Hatchet's Application

Hatchet claims to be a citizen of Sierra Leone who first arrived in the United States in 2002 and sought asylum at the Texas border.  R. 15-1 (2020 USCIS Decision at 1–2) (Page ID

#135–36).  Although Hatchet was not granted asylum, he was paroled into the United States.  *Id.* at 2 (Page ID #136).  Hatchet has a long history with the immigration system and has applied for discretionary relief on several occasions, but only USCIS's most recent denials of an adjustment of status are relevant to this case.

On November 24, 2015, Hatchet married Lovelyne Emefesi, a United States citizen, who filed a Form I-130 on Hatchet's behalf.  *Id.* at 3 (Page ID #137).  Hatchet then filed a Form I-485 seeking an adjustment of status.  *Id.*  After requesting supplemental information, USCIS approved the Form I-130 but denied the Form I-485.  *Id.*  USCIS found that Hatchet was inadmissible because he had falsely claimed United States citizenship when seeking asylum in 2002, although Hatchet argues that the immigration judge struck such finding on a previous occasion.  *Compare id., with* R. 41-1 (Hearing Tr. at 7:25–8:1) (Page ID #311–12).  On February 26, 2019, Hatchet requested that USCIS reopen and reconsider this denial.  R. 15-1 (2020 USCIS Decision at 3) (Page ID #137).  USCIS reopened Hatchet's case, but again denied relief, this time finding that Hatchet made a misrepresentation by failing to disclose prior removal proceedings during an interview.  *Id.*

Hatchet then filed a complaint in federal district court in August 2020.  R.1 (Compl.) (Page ID #1–26).  Hatchet brought various claims under the Administrative Procedure Act, including that USCIS acted in an arbitrary and capricious manner.  *Id.* ¶¶ 52–89 (Page ID #16–25).  In October 2020, however, USCIS sua sponte reopened Hatchet's application for adjustment of status.  R. 15-1 (2020 USCIS Decision at 3) (Page ID #137).  USCIS conducted an interview with Hatchet on November 6, 2020, but subsequent to that interview USCIS again denied Hatchet's application.  *Id.* at 3–4 (Page ID #137–38).  Specifically, USCIS first found that Hatchet was statutorily ineligible due to prior misrepresentations about (1) his children during an application Hatchet made while in a prior marriage, which would have led to the discovery of the fact that Hatchet was in an adulterous relationship; and (2) his citizenship status, which USCIS previously cited.  *Id.* at 5 (Page ID #139).  USCIS also found that it should not exercise discretion in Hatchet's favor for a variety of reasons.  *Id.* at 6–7 (Page ID #140–41).

## C.  Procedural History

After USCIS's most recent denial, Hatchet filed an amended complaint in district court. R. 28 (Am. Compl.) (Page ID #218–46).  Defendants filed a motion to dismiss on July 14, 2022, R. 38 (Mot. to Dismiss) (Page ID #264–65), arguing, among other things, that the Supreme Court's recent decision in *Patel* demonstrated that Hatchet's claims were not subject to judicial review due to a jurisdiction-stripping statute, R. 39 (Defs.' Mem. at 7–12) (Page ID #272–77). The district court ultimately agreed with defendants' position and dismissed Hatchet's amended complaint for lack of subject-matter jurisdiction.  R. 43 (Op. at 4–7) (Page ID #327–30).  Hatchet timely filed his notice of appeal on October 17, 2023.  R. 46 (Not. of Appeal) (Page ID #334–35).

## II.  DISCUSSION

### A.  Standard of Review

We review de novo a dismissal for lack of subject-matter jurisdiction.  *See, e.g.*, *Lovely v. United States*, 570 F.3d 778, 781 (6th Cir. 2009).

### B.  *Patel* and 8 U.S.C. § 1252(a)(2)(B)(i)

As a general matter, federal courts are courts of limited subject-matter jurisdiction.  *See, e.g.*, *United States v. Field*, 756 F.3d 911, 914 (6th Cir. 2014).  Because our subject-matter jurisdiction derives principally from statute, in certain circumstances Congress may strip us of jurisdiction to review claims that would otherwise fall within our purview.  *See, e.g.*, *Cooper Butt ex rel Q.T.R. v. Barr*, 954 F.3d 901, 910 (6th Cir. 2020).  In the federal immigration system, 8 U.S.C. § 1252(a)(2)(B) is one such statute.  It provides, in part, that:

> Notwithstanding any other provision of law (statutory or nonstatutory) . . . except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—(i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or (ii) any other decision of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in [their] discretion . . . .

8 U.S.C. § 1252(a)(2)(B)(i)–(ii).  Subparagraph (D) preserves "review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals."  *Id.* § 1252(a)(2)(D).

The Supreme Court recently addressed the effect of 8 U.S.C. §1252(a)(2)(B)(i) in the removal context in its decision in *Patel*.  The *Patel* Court held that 8 U.S.C. §1252(a)(2)(B)(i)'s plain language, including its stripping of jurisdiction over "*any* judgment *regarding* the granting of relief under" specified statutory provisions, means that federal courts are without jurisdiction to review both discretionary and nondiscretionary judgments related to the granting of relief, including factual findings.  596 U.S. at 338–39 (alteration in original).  This plain-language analysis is reinforced by subparagraph (D), which preserves review of "'constitutional claims' or 'questions of law.'"  *Id.* at 339 (quoting 8 U.S.C. §1252(a)(2)(D)).  "[I]f Congress made such questions an exception, it must have left *something* within the rule."  *Id.* (alteration in original).  According to the Court, that something includes fact findings.  *Id.*

In reaching this result, the Court expressly rejected arguments that sought to preserve review of nondiscretionary judgments made as part of the ultimate decision to grant relief like an adjustment of status.  *Id.* at 340–41.  Because such nondiscretionary findings, like credibility determinations, are still "judgment[s]," and given that 8 U.S.C. § 1252(a)(2)(B)(i) does not by its own terms limit nonreviewability to "discretionary judgments," the Court reasoned that *any* kind of judgment not preserved by subparagraph (D) is nonreviewable.  *Id.* at 341–42.  Likewise, the Court explained that 8 U.S.C. § 1252(a)(2)(B)(i)'s stripping of review goes beyond review of "second-step decision[s]"—that is, the decision whether to exercise discretion to grant relief—to sweep in findings made as part of "first-step decisions"—such as initial eligibility determinations.  *Id.* at 343–44.

Finally, the Court in *Patel* acknowledged that its holding would have broad implications for review of discretionary-relief decisions.  *See id.* at 344–36.  But those implications did not weigh in favor of a different result.  For one, courts would be unable to "review . . . some factual determinations made in the discretionary-relief context that would be reviewable if made elsewhere in removal proceedings."  *Id.* at 344.  The Court reasoned, however, that this likely stemmed from "Congress' choice to provide reduced procedural protection for discretionary

relief." *Id.* at 345. Second, the Court recognized that its decision could potentially insulate USCIS denials of discretionary relief from review, given that such decisions are made "outside of the removal context." *Id.* Although that question was not squarely before the Court, in dicta the Court noted that "foreclosing judicial review unless and until removal proceedings are initiated would be consistent with Congress' choice to reduce procedural protections in the context of discretionary relief." *Id.* at 346. Such policy concerns did not call for a different interpretation of § 1252(a)(2)(B)(i)'s text. *Id.*

### C. Title 8 U.S.C. § 1252(a)(2)(B)(i) Strips Jurisdiction Over Hatchet's Claims

Hatchet's appeal raises precisely the issue that was not squarely addressed in *Patel* but that the Court nevertheless discussed in dicta: whether, outside of the removal context, 8 U.S.C. § 1252(a)(2)(B)(i) precludes review of fact findings made by USCIS in discretionary-relief decisions, including eligibility determinations. Specifically, Hatchet seeks review of USCIS factual findings concerning Hatchet's statutory eligibility for adjustment of status. *See, e.g.*, Appellant Br. at 16–17. Because *Patel*'s logic applies with equal force to review of USCIS discretionary-relief decisions made outside of the removal context, we hold that we lack subject-matter jurisdiction to review the fact findings at issue in this case and affirm the district court's dismissal for lack of subject-matter jurisdiction.

First, we deal with the same text that the Supreme Court held prevents judicial review of fact findings in the removal context save for those issues preserved by subparagraph (D). Although 8 U.S.C. § 1252 is titled "Judicial review of orders of removal," this court and the Supreme Court have recognized that the statute applies outside of the removal context. *See, e.g.*, *CDI Info. Servs., Inc. v. Reno*, 278 F.3d 616, 619–20 (6th Cir. 2002). Indeed, § 1252(a)(2)(B)'s plain text reinforces the point: it explicitly states that it applies "*regardless of* whether the judgment, decision, or action is made in removal proceedings." (emphasis added). Accordingly, 8 U.S.C. § 1252(a)(2)(B)(i) applies to Hatchet's claims, because he has sought an adjustment of status under § 1255, even if that request for discretionary relief occurred outside of the removal context.

Once 8 U.S.C. § 1252(a)(2)(B)(i) applies, it is clear that we (and other federal courts) lack jurisdiction to review Hatchet's claims. Hatchet fundamentally attacks fact findings made as part of USCIS's first-step eligibility determination, particularly with respect to allegedly erroneous findings related to whether he may have made misrepresentations as part of prior applications or when seeking asylum. But as the Court explained in *Patel*, § 1252(a)(2)(B)(i) precludes our review of fact findings made as part of "first-step" nondiscretionary-eligibility decisions. 596 U.S. at 338–39, 343–44. Although *Patel* did not conclusively decide this issue as the decision pertained to § 1252(a)(2)(B)(i)'s application in the removal context, all nine justices effectively recognized that judicial review of fact findings would be foreclosed in the exact scenario presented by Hatchet's case. *Id.* at 345 (noting that the holding in *Patel* would likely preclude judicial review in the case of discretionary-relief decisions made outside of the removal context when § 1252(a)(2)(B)(i) applies); *id.* at 363 (Gorsuch, J., dissenting) (explaining that outside of the removal context "individuals who could once secure judicial review to correct administrative errors at step one in district court are now . . . likely left with no avenue for judicial relief"). Because the statutory language applies with full force here as it did in *Patel*, the plain language of § 1252(a)(2)(B)(i) precludes review of USCIS's fact findings pertaining to the eligibility determination in Hatchet's case.[1]

---

[1]Hatchet's case fundamentally concerns *fact* issues, not legal or constitutional claims. *See, e.g.*, R. 28 (Am. Compl. ¶ 74 (Page ID #239) ("[USCIS's] [d]ecision gets the facts wrong, misconstrues what actually occurred and arrived at conclusions that are clearly contrary to the evidence in the record."). By its own terms, *Patel* applies only to review of fact issues, because 8 U.S.C. § 1252(a)(2)(D) plainly preserves review of legal and constitutional questions when raised in the removal context. 596 U.S. at 347 ("Federal courts lack jurisdiction to review facts found as part of discretionary-relief proceedings under § 1255 and the other provisions enumerated in § 1252(a)(2)(B)(i)."). Our circuit, however, has previously made clear that § 1252(a)(2)(D) does not prevent district courts from considering certain questions even when raised outside of petitions for review, despite subparagraph (D) referring to "a petition for review filed with an appropriate court of appeals." *See, e.g.*, *Hosseini v. Johnson*, 826 F.3d 354, 359 n.6 (6th Cir. 2016) ("A more compelling reading of the explicit exception [in subparagraph (D)] is that it 'does not withdraw district court jurisdiction that derives from other sources,' but rather it merely 'clarifies that review of legal and constitutional questions are possible on a petition for review.'" (quoting *Mejia Rodriguez v. U.S. Dep't of Homeland Sec.*, 562 F.3d 1137, 1145 n.15 (11th Cir. 2009) (per curiam)); *see also Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 494 (6th Cir. 2014). No doubt, *Patel* circumscribed the claims that are reviewable in federal courts, and our previous distinction between discretionary and non-discretionary determinations is no longer tenable. But what remains reviewable or not outside of the removal context is still an open question, because *Patel* does not speak to anything beyond fact questions. *See, e.g.*, *Doe v. Sec'y, U.S. Dep't of Homeland Sec.*, No. 22-11818, 2023 WL 2564856, at *3 (11th Cir. Mar. 20, 2023) (per curiam) (explaining that a due-process challenge would be reviewable under subparagraph (D) despite being raised in a complaint filed in district court). For today's purposes, we need not go further than decide that *Patel* bars federal-court review of USCIS's factual determinations.

Finally, every circuit court to have considered this issue post-*Patel* has held that § 1252(a)(2)(B)(i) precludes, at a minimum, judicial review of fact findings related to discretionary-relief decisions made outside of the removal context. *E.g., Abuzeid v. Mayorkas*, 62 F.4th 578, 584 (D.C. Cir. 2023) ("To avoid dismissal of their case, appellants seek to confine *Patel*'s holding to petitions for review of removal orders . . . . [W]e see no basis for the distinction that appellants attempt to draw."); *Britkovvy v. Mayorkas*, 60 F.4th 1024, 1029 (7th Cir. 2023) ("While *Patel* does not resolve the question presented in this appeal, its reasoning supports the conclusion that judicial review is unavailable."); *Mendoza v. Mayorkas*, No. 23-20043, 2023 WL 6518152, at *1 (5th Cir. Oct. 5, 2023) (per curiam) ("[T]he denial of [plaintiff's] status adjustment under § 1255 triggers § 1252(a)(2)(B)'s bar for judicial review."); *Doe v. Sec'y, U.S. Dep't of Homeland Sec.*, No. 22-11818, 2023 WL 2564856, at *3 (11th Cir. Mar. 20, 2023) (per curiam) ("The District Court did not err in determining it lacked subject matter jurisdiction over [plaintiff's] complaint because the plain text of § 1252(a)(2)(B)(i) indicates that 'no court' has jurisdiction in any judgment regarding the granting of relief under § 1255."); *cf. Shaiban v. Jaddou*, 97 F.4th 263, 266 (4th Cir. 2024) (applying *Patel*'s logic to § 1252(a)(2)(B)(ii)).

Hatchet's arguments to the contrary are easily dismissed, as every argument asks us simply to disagree with the reasoning of the Supreme Court with respect to the same statutory language. To do so, however, Hatchet must provide us with some reason why *Patel* does not effectively control the outcome here. Hatchet has not done so. Hatchet first mounts textual arguments for why § 1252(a)(2)(B)(i) does not apply to "nondiscretionary eligibility determinations." Appellant Br. at 23. But as discussed, *Patel* clearly said that the "any judgment" language in § 1252(a)(2)(B)(i) is broad enough to cover such determinations. 596 U.S. at 343–44 (rejecting this distinction). Hatchet next makes what is in essence a clear-statement argument, suggesting that Congress would have spoken in clearer terms if it had wanted to preclude judicial review. Appellant Br. at 27 (referencing 8 U.S.C. § 1182(h)–(i)). Yet Hatchet's case concerns § 1255, as in *Patel*, and the Supreme Court's decision sweeps in all of the provisions referred to in § 1252(a)(2)(B)(i) in any event. Seeking to avoid *Patel* altogether, Hatchet turns to a different sort of argument, suggesting that § 1252(a)(2)(B)(i) does not apply outside the removal context. That argument, however, ignores both our precedent,

*CDI Information Services*, 278 F.3d at 619–20, and the provision's plain language, § 1252(a)(2)(B) (noting that the provision applies "regardless of whether the judgment, decision, or action is made in removal proceedings"). Finally, Hatchet invokes the presumption of reviewability under the APA and the requirement that Congress speak clearly when it wishes to overcome such presumption or take away judicial review. *See, e.g.*, Appellant Br. at 32. The *Patel* Court, however, explicitly held that § 1252(a)(2)(B)(i) is so clear with respect to its jurisdiction-stripping effect that "we have no reason to resort to the presumption of reviewability." 596 U.S. at 347.

At bottom, Hatchet in his briefing asks us to disagree with the Supreme Court. *See, e.g.*, Appellant Br. at 37 ("[T]he Court ignored its own precedent [in *Patel*] that long recognized a distinct difference between decisions to grant discretionary relief and the associated underlying eligibility determinations."); *id.* at 42 ("Plaintiff respectfully submits that the *Patel* [C]ourt's declination to employ the strong presumption of judicial review of agency action mischaracterized said presumption as an interpretive tool of last resort."). But we are not at liberty to ignore the Supreme Court. And to the extent that Hatchet relies on pre-*Patel* caselaw that is either inconsistent with *Patel* or at odds with its logic, *Patel* governs. Accordingly, we hold that the district court lacked jurisdiction to review the factual findings of USCIS, and because Hatchet's arguments are entirely fact-bound, we agree that the district court properly dismissed the case for lack of subject-matter jurisdiction.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.