# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 28, 2024

Lyle W. Cayce
Clerk

No. 23-20327

Naeem Nizar Ali Momin,

*Plaintiff—Appellant*,

*versus*

Ur M. Jaddou, *Director of U.S. Citizenship and Immigration Services*; Alejandro Mayorkas, *Secretary, U.S. Department of Homeland Security*; Wallace L. Carroll, *Houston Field Office Director US Citizenship and Immigration Services*; Merrick Garland, *U.S. Attorney General*,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:23-CV-157

_____

Before Wiener, Haynes, and Higginson, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:

Appellant, a man who has lived in this country for the last thirty years, and who is both married to a U.S. citizen and the father of U.S. citizens, has spent the last seventeen years attempting to adjust his immigration status. In 2021, the last of his three applications was denied, on the ground that the use of an incorrect birthdate had "permeated all facets" of Appellant's life and constituted fraud rendering him ineligible for adjustment. Appellant sought

review in district court, which dismissed for lack of jurisdiction, and now appeals that decision. Because 8 U.S.C. § 1252(a)(2)(B)(i) poses a jurisdictional bar to our review under the law as it stands, we have no choice but to AFFIRM.

## I.

### A.

A noncitizen who is already in the United States may seek to adjust his immigration status to that of a lawful permanent resident, without leaving the country, under 8 U.S.C. § 1255(a). To do so, the noncitizen must file a Form I-485, or an Application to Register Permanent Residence or Adjust Status ("Form I-485"), with United States Citizen and Immigration Services ("USCIS"). 8 C.F.R. § 245.2(a)(3)(ii). Upon receipt of the Form I-485, § 1255(a) affords the Attorney General the discretion to adjust the noncitizen's status, provided that he is "admissible." *See* 8 U.S.C. § 1255(a). Circumstances under which noncitizens are *in*admissible are defined in 8 U.S.C. § 1182. As relevant here, a noncitizen is considered inadmissible for the purposes of § 1255(a) if he, "by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit." 8 U.S.C. § 1182(a)(6)(C)(i).

A noncitizen considered inadmissible under § 1182 nonetheless has another avenue of recourse: He may apply for a waiver of grounds of inadmissibility under 8 U.S.C. § 1182(i)(1) by filing an Application for Waiver of Grounds of Inadmissibility ("Form I-601"), also with USCIS. *See* 8 C.F.R. § 212.7(a)(1). "The Attorney General may, in the discretion of the Attorney General," waive the noncitizen's inadmissibility "if it is established to the satisfaction of the Attorney General that the refusal of admission to the United States of such immigrant alien would result in extreme hardship to

the citizen or lawfully resident spouse or parent of such alien . . . ." 8 U.S.C. § 1182(i)(1).[1] Without such a waiver, an inadmissible noncitizen remains ineligible for adjustment of status under § 1255(a).

The judicial review available for both determinations of adjustment of status under § 1255 and waiver of inadmissibility under § 1182 is described, and constrained, by statute:

> Notwithstanding any other provision of law . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—
>
> > (i) any judgment regarding the granting of relief under section . . . 1182(i) . . . or 1255 of this title, or
> >
> > (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . .

8 U.S.C. § 1252(a)(2)(B). In addition, 8 U.S.C. § 1182(i)(2) also provides that "[n]o court shall have jurisdiction to review a decision or action of the Attorney General regarding a waiver under paragraph [§ 1182(i)](1)."

The extent to which these jurisdictional limitations preclude judicial review is the central question in this matter.

B.

On April 24, 1994, Appellant Naeem Nizar Ali Momin ("Momin") entered the United States from Pakistan on a tourist visa. Upon entry, he was questioned by Customs and Border Protection personnel and, as relevant for

---

[1] Statutory references to the "Attorney General" also refer to the Secretary of Homeland Security, under whom USCIS is organized. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135.

No. 23-20327

this appeal, he testified that his date of birth was November 20, 1975. Momin was given instructions to appear before an immigration judge ("IJ") for exclusion proceedings. According to the USCIS, Momin failed to appear for that proceeding; he was ordered excluded *in absentia* on June 17, 1994.

Thirteen years later, in 2007, Momin made his first attempt at adjusting his status: His employer filed a Form I-140, an Immigrant Petition for Alien Worker, on his behalf. Momin also filed a Form I-485 and attached several supporting documents, including a birth certificate and passport. In the process of preparing this application, Momin first learned of the *in absentia* order entered against him. According to Momin, he had appeared for his hearing as instructed, "but was informed that the hearing had been rescheduled." *Nizarali v. Holder*, 366 F. App'x 221, 222 (2d Cir. 2010). As a result, Momin moved to reopen his exclusion proceeding on November 20, 2007, arguing that his failure to appear was solely due to the fact that he had never received notice of the rescheduled hearing. *Id.* The IJ denied the petition to reopen, and the Board of Immigration Appeals ("BIA") affirmed that denial but the Second Circuit reversed and remanded. The Second Circuit credited Momin's explanations and held that because "[t]here [wa]s nothing in the record to indicate that notice was sent by certified mail"—and Momin had submitted an affidavit of non-receipt—the BIA was "required to 'consider all of the petitioner's evidence.'"[2] *Id.*

USCIS denied Momin's first application for adjustment of status in November 2014 because the sponsoring company could not show that it could pay the proffered wage. Though not a reason for the denial,[3] the USCIS

---

[2] Subsequent proceedings before the IJ are not apparent in the record.

[3] The record does not contain the documents pertinent to the USCIS' decision on Momin's first application. However, this was not cited as a reason for that denial in the USCIS's recapitulation of Momin's procedural history in subsequent decision letters.

4

later found it notable that both the Form I-140 and Form I-485 that Momin submitted with this application indicated that his date of birth was December 21, 1976, not the November 20, 1975 date that he testified to in his 1994 interview.

In 2000, Momin married a citizen, with whom he had two children, in 2001 and 2005, respectively. Momin made his second application for adjustment of status on February 2, 2017, submitting a Form I-485 as the spouse derivative beneficiary of his wife.[4] As support, he attached a new birth certificate but the same passport page used for his first Form I-485 (showing a birthdate of December 21, 1976). Before USCIS made a decision, Momin withdrew the application on February 25, 2019, on the advice of counsel. Before he withdrew, however, USCIS opened an investigation into Momin's case. It determined, after "forensic analysis," that the birth certificate submitted with Momin's first (2007) Form I-485 application and the passport submitted with both of his Form I-485 applications were fraudulent documents. By contrast, the "forensic analysis" determined that the birth certificate submitted with his second Form I-485 application was authentic.

In 2019, Momin reapplied to adjust his status, again as the spouse derivative beneficiary of his wife. To his Form I-485, he attached several documents, including: (1) a copy of his birth certificate (the one USCIS determined was authentic, showing a birthdate of November 20, 1975); and (2) a copy of his passport (the one USCIS deemed fraudulent). In a July 23, 2020 interview with USCIS, Momin testified that his date of birth was November 20, 1975; he also provided further supporting documentation for

_____

[4] Under 8 U.S.C. § 1255(e), noncitizens who are married to citizens may be eligible for adjustment.

his application at that interview, including copies of birth certificates of his two children.

On August 17, 2020, USCIS issued a notice of intent to deny ("NOID"). It explained that Momin was inadmissible for having made misrepresentations: (1) "by presenting a known false passport" during his entry in April of 1994; (2) by submitting a fraudulent birth certificate and biographic page of a passport in his first Form I-485 application in 2007, both of which incorrectly listed a date of birth as December 21, 1976; (3) by using that same passport page in his third Form I-485 application submitted in May 2019; and (4) by answering "no" to questions asking "if you have ever submitted any fraudulent or counterfeit documents" or "if you have ever lied about, concealed, or misrepresented any information on an application" in his third Form I-485 application, submitted in May 2019.

Momin responded to the NOID, explaining that he intended to file a Form I-601 for waiver of inadmissibility. He also contested the allegation that the birth certificate was fraudulent, maintaining that it was a real document issued by the Pakistani Government. To this end, he submitted a letter from the Pakistani consulate purportedly verifying the authenticity of both passports and certificates and attesting that the incorrect birth date was an internal error by the Pakistani Government. In a December 23, 2020 letter, USCIS rejected this explanation because "forensic analysis" revealed that "the birth certificate that shows your birth [date] as December 21, 1976 is not a real document issued by the Pakistani Government with an incorrect date," and further, that this conclusion "was corroborated by a government official in Pakistan."

The letter from the Pakistani consulate also explained that Momin was issued a new passport (on January 9, 2019), *prior* to Momin's third Form I-485 application (submitted on May 23, 2019). USCIS therefore did not find

that the letter furnished a defense to the charge that Momin had knowingly submitted incorrect information with his 2019 Form I-485 application, as he could have submitted a copy of this new passport, rather than a copy of the one they had deemed to be fraudulent.

The December letter also stated that Momin had abandoned his application because there was no Form I-601 on file. This was news to Momin, who had submitted a Form I-601 and even provided a "courtesy copy" to USCIS, which USCIS itself acknowledged. So Momin initiated yet another lawsuit, this time in the Southern District of Texas. *See Momin v. Jaddou,* No. 4:21-cv-03363 (S.D. Tex. 2021). USCIS eventually acknowledged there had been an "error in processing" and that it had received the Form I-601.

USCIS denied Momin's Form I-601 request for a waiver of inadmissibility on November 10, 2021. It stated that although Momin had presented sufficient evidence showing that he and his wife would suffer extreme hardship, that was "outweighed by the volume and length of time [Momin had] presented [him]self falsely within society." The problem, USCIS explained, was the discrepancy in his date of birth—specifically, in his testimony to USCIS (throughout his various applications for adjustment of status); to the state of Georgia when his children were born (the birth certificates of both his children listed his date of birth as December 21, 1976); to his first employer; and to his physician. According to USCIS, this history of repeated use of the incorrect birthdate contradicted Momin's proffered explanation and apology that he never intended to mislead, and the "false date of birth ha[d] permeated all facets of [Momin's] life." USCIS thus denied Momin's Form I-601 application, rendering him ineligible to adjust his status.

No. 23-20327

Momin sued USCIS and certain officials on January 17, 2023, seeking judicial review under the Administrative Procedure Act ("APA") and a declaratory judgment that the denials of his waiver of inadmissibility and adjustment of status were arbitrary and capricious. The district court dismissed for lack of subject matter jurisdiction. It explained that "the decisions to find an alien to be inadmissible and deny an application for adjustment of status on that basis," along with decisions to deny applications for waivers of inadmissibility, are "squarely within the discretion [of] USCIS." This followed from "the plain language . . . preclud[ing] judicial review" in § 1252(a)(2)(B) and § 1182(i)(2)—and the Supreme Court's instruction that this jurisdictional bar applies to "any judgment *relating to* the granting of relief." *Patel v. Garland*, 142 S. Ct. 1614, 1622 (2022). Momin timely appealed.

## II.

We review dismissal for lack of subject matter jurisdiction *de novo*. *Flores v. Garland*, 72 F.4th 85, 88 (5th Cir. 2023).

Momin's main argument is that the jurisdiction-stripping provision in 8 U.S.C. § 1252 applies only to *removal* proceedings, to which he is not subject.[5] Indeed, Momin had already been ordered excluded and was dealing with USCIS, not the BIA for his adjustment of status. For this reason, Momin argues that the district court's application of *Patel v. Garland* to resolve his case was misplaced, as *Patel* also concerned removal proceedings and expressly refused to extend its ruling beyond the removal context. Moreover, Momin also argued that, as a noncitizen in exclusion proceedings, he cannot

---

[5] Momin also argues that the district court incorrectly claimed that Momin's suit is precluded from review because it was a direct challenge to a final order of removal, and in fact he challenges neither an order of removal nor his exclusion order. But the district court discusses neither final orders of removal nor exclusion in its jurisdictional analysis.

seek review of his application by an IJ, and judicial review is therefore his only recourse.

## A.

Upon a review of § 1252(a)(2)(B)(i) and *Patel*, we cannot say the district court erred.

First, we look to the plain text of the statute. Such language is important because, against the backdrop of the "well-settled" and "strong presumption" "favoring judicial review of administrative action," that presumption "can only be overcome by clear and convincing evidence of congressional intent to preclude judicial review." *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020) (internal quotation marks and citations omitted). Such evidence of intent may be found, as the Supreme Court has explained, in "specific language in a provision or evidence drawn from the statutory scheme as a whole." *Patel*, 596 U.S. at 347 (internal quotation marks and citations omitted).

The specific language used in the statute lends credence to the argument that Congress intended to foreclose judicial review here. Contrary to Momin's argument, the plain text of § 1252(a)(2)(B)(i) indicates that its jurisdictional bar is not limited to the removal context. That provision states: "*[R]egardless of whether the judgment, decision, or action is made in removal proceedings*, no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1255." 8 U.S.C. § 1252(a)(2)(B)(i) (emphasis added).

The conclusion that the jurisdictional bar in § 1252(a)(2)(B)(i) applies outside the removal context is reinforced by the broad language used by the Supreme Court to describe it. In *Patel*, the Court considered whether the provision "precludes judicial review of factual findings that underlie a denial of relief." 596 U.S. at 331. In answering affirmatively, the Court held that

§ 1252(a)(2)(B)(i) strips jurisdiction from review of "*any judgment regarding the granting of relief*" under § 1255. *Id.* (emphasis added). It explained that "judgment" in this context means "any authoritative decision," which was a "broad definition" that "encompasses *any and all* decisions relating to the granting or denying of discretionary relief." *Id.*at 337 (emphasis added) (internal quotation marks and citations omitted); *see also id.* at 338 (noting the provision "does not restrict itself to certain kinds of decisions"). Likewise, "'any' has an expansive meaning," and "'regarding' . . . generally has a broadening effect." *Id.* at 338–39 (citations omitted). As a result, the Court concluded, § 1252(a)(2)(B)(i) "encompasses not just 'the granting of relief' but also any judgment *relating to* the granting of relief," which "plainly includes factual findings." *Id.* at 339.

In light of the plain text of § 1252(a)(2)(B)(i) and the reasoning in *Patel*, every court of appeals to consider the question has held that the jurisdictional bar applies outside the removal context—including to USCIS denials of adjustment of status. *See, e.g.*, *Doe v. Sec'y, U.S. Dep't of Homeland Sec.*, No. 22-11818, 2023 WL 2564856, at *3 (11th Cir. Mar. 20, 2023) (per curiam) (affirming absence of subject matter jurisdiction to review a USCIS denial of adjustment of status because "the plain text of § 1252(a)(2)(B)(i) indicates that 'no court' has jurisdiction in any judgment regarding the granting of relief under § 1255."); *Abuzeid v. Mayorkas*, 62 F.4th 578, 583 (D.C. Cir. 2023) ("Consideration of appellants' APA claim [regarding a USCIS denial of adjustment of status] is foreclosed by a straightforward application of § 1252(a)(2)(B)(i) and the Supreme Court's decision in *Patel . . . .*"); *Britkovyy v. Mayorkas*, 60 F.4th 1024, 1028 (7th Cir. 2023) ("The result is that § 1252(a)(2)(B)(i) operates to eliminate judicial review of the denial of an adjustment-of-status application by USCIS."). We have also done so, in an unpublished opinion. *See Mendoza v. Mayorkas*, No. 23-20043, 2023 WL 6518152, at *1 (5th Cir. Oct. 5, 2023) (unpublished).

No. 23-20327

B.

The plain text, standing alone, thus resolves the question. But it is also highly relevant, though not dispositive, that both the majority and the dissent understood that the holding in *Patel* would have implications beyond the removal context. It is true that the *Patel* majority explicitly stated that "[t]he reviewability of [USCIS denials of discretionary relief] is not before us, and we do not decide it"—but it mused, in the very next line, that "it is possible that Congress did, in fact, intend to close that door." *Patel*, 596 at 345.[6] Likewise, Justice Gorsuch noted in his dissent that "individuals frequently seek to adjust their status . . . *outside* the removal context," "[s]o under the majority's construction," those "individuals who could once secure judicial review to correct administrative errors . . . in district court . . . [would be] likely left with no avenue for judicial relief *of any kind*" *Id.* at 363 (Gorsuch, J., dissenting). Indeed, he feared that "[a]n agency may err about the facts, the law, or even the Constitution and *nothing* can be done about it." *Id.*[7]

---

[6] In its explanation that § 1252(a)(2)(B)(i)'s effect of "foreclosing judicial review unless and until removal proceedings are initiated" "would be consistent with Congress' choice to reduce procedural protections in the context of discretionary relief," *Patel* cites *Lee* v. *USCIS*, a Fourth Circuit case which itself held that § 1252(a)(2)(B)(i) precluded judicial review of adjustment decisions made by USCIS outside the removal context. *Id.* at 346 (citing 592 F.3d 612, 620 (4th Cir. 2010)).

[7] The recent decision in *Wilkinson v. Garland*, 601 U.S. 209 (2024) partially addresses this fear. *Wilkinson* held that 8 U.S.C. § 1252(a)(2)(D), which restores jurisdiction for judicial review of "constitutional claims or questions of law . . . filed with an appropriate court of appeals," applies to mixed questions of law and fact. 601 U.S. at 217; *see also id.* at 222. On this basis, the Court held there was jurisdiction to review an IJ's determination that a petitioner failed to satisfy the statutory eligibility standard for exceptional hardship under 8 U.S.C. § 1229b(b)(1)(D), one of the four criteria that must be satisfied before the Attorney General may cancel that petitioner's removal. *See id.* at 225.

Despite contentions to the contrary, *Wilkinson* does not support Momin's position. In *Wilkinson*, the BIA's determination could be appealed to the court of appeals, and qualified for review under § 1252(a)(2)(D). By contrast, Momin's USCIS adjustment

Justice Gorsuch's apprehension describes the very situation Momin faces. It is not lost on us that the government has made several errors in Momin's case, which have created a byzantine gauntlet that has repeatedly required judicial correction to even run. In 1994, though Momin appeared for the hearing before the IJ as scheduled, he was ordered excluded—because the government had rescheduled the hearing and failed to provide him requisite notice. In 2020, USCIS initially denied Momin's adjustment of status application by claiming that he had never sent a Form I-601, which it had in fact received, because of the government's "error in processing." In both instances, judicial review was crucial for correcting governmental oversights.

Nor, we fear, are those the only errors that may be in need of correction. Take, for example, the explanations USCIS has given for its denials of Momin's applications. USCIS' letters all reference Momin's attempted use of "a known false passport" during his entry in April of 1994 as evidence of his fraud. Yet at oral argument, Momin alleged "there was a formal finding in exclusion proceedings that stated Momin did not commit fraud upon entry, and that charge was removed from his charging

---

determination is not directly subject to review by a court of appeals. Moreover, Momin has not identified a specific question of law in need of correction—mixed or otherwise. And to the extent that Momin broadly challenges USCIS's refusal to adjust his status, that would also run headlong into the provisions preventing judicial review of discretionary agency decisions—of which adjustment of status is one. *See* 8 U.S.C. § 1252(a)(2)(B)(ii) ("[N]o court shall have jurisdiction to review . . . any other decision . . . which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security."); 8 U.S.C. § 1182(i)(2) ("No court shall have jurisdiction to review a decision or action of the Attorney General regarding a waiver under paragraph [§ 1182(i)](1)."); 5 U.S.C. § 701(a)(2) (precluding review of "agency action . . . committed to agency discretion by law"); *see also* 8 U.S.C. § 1255(i)(2)(A) ("[T]he Attorney General *may* adjust the status of the alien [if] . . . the alien is eligible to receive an immigrant visa and is admissible.") (emphasis added)); 8 U.S.C. § 1182(i)(1) (the "Attorney General *may*, *in the discretion of the Attorney General*, waive" the inadmissibility of a noncitizen) (emphasis added)).

document." *See* Oral Argument at 7:38, *Momin v. Jaddou*, No. 23-20327 (Mar. 6, 2024), https://www.ca5.uscourts.gov/OralArgRecordings/23/23-20327_3-6-2024.mp3. Those proceedings are not contained in the record before us, [8] though the government did not contest this allegation at argument. What *is* in the record inspires no more confidence, as USCIS has itself provided inconsistent statements. For example, in its November 10, 2021 Denial for Momin's Form I-601, USCIS stated the fraudulent birth certificate that Momin submitted with his 2007 Form I-485 application has a serial number of 30034, but its August 17, 2020 NOID, December 23, 2020 Decision, and November 10, 2021 Superseding Decision letters state that the fraudulent birth certificate bears a serial number of 4938. As the birth certificate is a document that "was examined by forensic analysis and determined to be a fraudulent document," and the entire basis for Momin's inadmissibility, the particulars—such as the serial number—should matter. "If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them." *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021).

If this discrepancy begs the question how much a potential typographical error may matter, that very same question can be posed to the government. The government, in other words, appears to have committed typographical errors indistinguishable from the errors on which it relied to deny Momin's waiver. According to USCIS, Momin's violation of 8 U.S.C.

_____

[8] It is for this reason that Momin's argument about estoppel also cannot be credited. Though Momin alleged in his brief that "[a]fter testimony the Judge did not sustain the INA 212(a)(6)(c)(i) fraud charge and the Defendants withdrew that charge on his Order to Show Cause, instead proceeding on INA 212(a)(7)(A)(i)(I) as an alien not have a valid entry document at time of application for admission," the only record citation provided for that proposition concerns the administrative closure of the case, but not any fact finding by the IJ.

§ 1182(a)(6)(C)(i)—his "fraud or willful[] misrepresent[ation of] a material fact" that rendered him inadmissible—lies in the fact that a "false date of birth ha[d] permeated all facets of [Momin's] life." [9] But what's in a birthdate? Or, more specifically, what's in a typographical error concerning one's birthdate when there are no allegations of benefit or consequence—and, thus, no apparent significance? Tellingly, in oral argument, the government had no answer.

## III.

That Momin has no recourse for what may be a series of mistakes by the government is cruel but legally compelled. As the law stands, 8 U.S.C. § 1252(a)(2)(B)(i) precludes judicial review of denials of applications for adjustment of status and waivers of inadmissibility. This case illustrates some of the pitfalls that follow. In the absence of judicial review to ensure that the government turns square corners, we are left only with the hope that USCIS will give any future application by Momin to reopen his case careful attention.

The judgment of the district court is AFFIRMED.

_____

[9] Both in his briefs and at oral argument, Momin maintained that the letter he submitted from the Pakistani consulate, which is available in the record, was valid. Conversely, as there is nothing further in the record to illuminate USCIS's conclusion that this letter was fraudulent—no explanation of process or evidence of the communications between the governments on this issue—this also rests on the *ipse dixit* of our government.