*Xia v. Bondi*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2024
No. 24-2304

SUQIN XIA,
*Plaintiff-Appellant*,

*v.*

PAMELA BONDI, United States Attorney General; KRISTI NOEM,
Secretary, Department of Homeland Security; KIKA SCOTT, Acting
Director, U.S. Citizenship and Immigration Services; CONNIE
NOLAN, Associate Director for Service Center Operations, U.S.
Citizenship and Immigration Services; BARBARA OWLETT, Field
Office Director, U.S. Citizenship and Immigration Services Long
Island,
*Defendants-Appellees.*∗

On Appeal from a Judgment of the United States District Court for
the Eastern District of New York.

ARGUED: FEBRUARY 6, 2025
DECIDED: MAY 19, 2025

---

∗ The Clerk of Court is respectfully directed to amend the official caption
as set forth above.

Before: PARKER, BIANCO, and NARDINI, *Circuit Judges*.

_____

Plaintiff-Appellant Suqin Xia, a citizen of the People's Republic of China who has lived in the United States unlawfully for more than thirty years, applied for adjustment of status to lawful permanent resident, a discretionary form of relief, under 8 U.S.C. § 1255. The United States Citizenship and Immigration Services ("USCIS") denied Xia's application after determining that she did not warrant a favorable exercise of discretion. Xia challenged the agency's decision in the United States District Court for the Eastern District of New York under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act, 5 U.S.C. §§ 701–706. The district court (Allyne R. Ross, *District Judge*) determined that 8 U.S.C. § 1252(a)(2)(B)(i)—which, in pertinent part, bars judicial review of "any judgment" regarding an application made under § 1255—applied to this action, and therefore dismissed the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. We agree with the district court that a denial of an application for adjustment of status under § 1255 is a "judgment" for purposes of § 1252(a)(2)(B)(i) regardless of whether it is issued by an immigration court or USCIS. Accordingly, the judgment of the district court is AFFIRMED.

_____

MARY B. MCGARVEY-DEPUY (Varuni Nelson, Kimberly A. Francis, *on the brief*), Assistant United States Attorneys, *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Defendants-Appellees*.

2

JEAN WANG, Wang Law Office, PLLC, Flushing, NY, for *Plaintiff-Appellant*.

WILLIAM J. NARDINI, *Circuit Judge*:

Plaintiff-Appellant Suqin Xia, a citizen of the People's Republic of China who has lived in the United States unlawfully for more than thirty years, applied for adjustment of status to lawful permanent resident, a discretionary form of relief, under 8 U.S.C. § 1255. The United States Citizenship and Immigration Services ("USCIS") denied Xia's application after determining that she did not warrant a favorable exercise of discretion. Xia challenged the agency's decision in the United States District Court for the Eastern District of New York under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. The district court (Allyne R. Ross, *District Judge*) determined that 8 U.S.C. § 1252(a)(2)(B)(i)—which, in pertinent part, bars judicial review of "any judgment" regarding an application made under § 1255—applied to this action, and therefore dismissed the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

We agree with the district court that § 1252(a)(2)(B)(i) precludes judicial review of Xia's claims. Although Xia argues that this provision applies only to judgments by immigration courts, the Supreme Court's reasoning in *Patel v. Garland*, 596 U.S. 328 (2022), and the overall statutory framework lead us to conclude otherwise. We hold that a denial of an application for adjustment of status under

3

§ 1255 is a "judgment" for purposes of § 1252(a)(2)(B)(i) regardless of whether it is issued by an immigration court or USCIS. Because Xia challenges such a judgment, the jurisdictional bar applies. Xia's remaining arguments are unavailing. Accordingly, the judgment of the district court is AFFIRMED.

## I.  Background

### A. Xia's Unlawful Presence in the United States

Xia arrived at John F. Kennedy International Airport in New York in October 1993 without authorization to enter the United States. At the time, she was several months pregnant with twin daughters, and she claimed that she feared returning to China because she would face persecution for violating that country's one-child policy. She was paroled into the United States pending an asylum hearing. In February 1995, an immigration judge denied her asylum application and ordered her removed to her native country. But that order was never executed, and Xia has remained in the United States unlawfully for over three decades.

### B. Xia's Application for Adjustment of Status

In October 2021, pursuant to 8 U.S.C. § 1255(a), Xia filed a Form I-485 Application to Register Permanent Residence or Adjust Status, as the immediate relative of a U.S. citizen. In a decision dated March 7, 2024, USCIS denied Xia's application, basing its decision solely on discretionary grounds without making any determination as to her statutory eligibility for adjustment of status. The agency

4

identified several factors that weighed against granting the application, including that Xia "blatantly disregarded" the outstanding removal order and remained in the United States in violation of U.S. law for nearly thirty years, and that she incredibly professed ignorance of the removal order during her interview for her adjustment application despite having been provided a copy of the order when it was issued in 1995. App'x 66. Additional negative factors included Xia's three convictions for disorderly conduct, which demonstrated "a disregard for criminal law," and her twenty-plus years of unauthorized employment. *Id.* at 66–67. On the positive side of the ledger, the agency primarily considered Xia's status as the mother of two adult U.S. citizens, but because they were born while she was already in removal proceedings, her "ties to them constitute after-acquired equities and [were therefore] given less weight." *Id.* at 68. After weighing all relevant factors, the agency decided that Xia did "not warrant a favorable exercise of discretion." *Id.*

### C. District Court Proceedings

On January 19, 2024, while her adjustment application was still pending, Xia commenced this action under the Mandamus Act, 28 U.S.C. § 1361, and Section 706(1) of the APA, seeking an order directing USCIS to adjudicate the application. After USCIS denied the application, Xia amended her complaint to seek judicial review of that decision. She alleged that the agency violated the APA by issuing a decision that was contrary to law, arbitrary and capricious, and unsupported by the record. The defendants—Merrick Garland, then-U.S. Attorney General; Alejandro Mayorkas, then-Secretary of the

5

U.S. Department of Homeland Security; Ur Mendoza Jaddou, then-Director of USCIS; and USCIS officers Connie Nolan and Barbara Owlett[1]—moved to the dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).[2]

The district court agreed with the defendants that it lacked subject matter jurisdiction over Xia's claims. The court determined that the jurisdictional bar set forth in 8 U.S.C. § 1252(a)(2)(B)(i), which precludes Article III courts from reviewing "any judgment regarding the granting of relief under section . . . 1255," foreclosed this action. Under binding Second Circuit precedent, the court explained, the jurisdictional bar "strips the courts of jurisdiction to review the [Board of Immigration Appeals]'s weighing of discretionary factors in denying an application for adjustment of status under § 1255." *Xia v. Garland*, No. 24-CV-395 (ARR) (SJB), 2024 WL 3925766, at *2 (E.D.N.Y. Aug. 23, 2024) (first citing *Wallace v. Gonzales*, 463 F.3d 135, 138 (2d Cir. 2006); and then citing *Guyadin v. Gonzales*, 449 F.3d 465, 468 (2d Cir. 2006)). Applying that rule here, the court concluded that because USCIS denied Xia's application as a matter of discretion, the denial constituted an unreviewable "judgment" for purposes of

---

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Pamela Bondi, Secretary of Homeland Security Kristi Noem, and Acting Director of USCIS Kika Scott are automatically substituted for their predecessors as defendants.

[2] The defendants also moved to dismiss any Mandamus Act claim, in the alternative, for failure to state a claim under Rule 12(b)(6).

6

§ 1252(a)(2)(B)(i). Accordingly, the court granted the defendants' motion to dismiss pursuant to Rule 12(b)(1).

## II. Discussion

On appeal, Xia contends that the district court erred in dismissing her complaint for lack of subject matter jurisdiction. She argues, among other things, that § 1252(a)(2)(B)(i) does not apply here because it bars judicial review only of *judgments* by an immigration court, not of *decisions* by USCIS. We disagree. The district court correctly determined that § 1252(a)(2)(B)(i) precludes judicial review of USCIS's decision and therefore properly dismissed Xia's claims under Rule 12(b)(1). Xia's remaining arguments are unavailing.

### A. Standard of Review

A district court properly dismisses an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) if the court "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.Á.R.L*, 790 F.3d 411, 416–17 (2d Cir. 2015) (internal quotation marks omitted). The plaintiff bears the burden of establishing by a preponderance of the evidence that subject matter jurisdiction exists. *See Nouritajer v. Jaddou*, 18 F.4th 85, 88 (2d Cir. 2021). On appeal from a dismissal under Rule 12(b)(1), we review the district court's legal conclusions *de novo* and its factual findings for clear error. *Id.*

7

## B. Statutory and Regulatory Framework

Section 1255(a) provides that "[t]he status of an alien who was inspected and admitted or paroled into the United States," otherwise known as an arriving alien, "may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence," so long as the alien meets the statutory requirements for such adjustment. Congress later extended jurisdiction over applications for adjustment of status to USCIS, a component agency of the Department of Homeland Security, in addition to the Department of Justice. *See* 6 U.S.C. §§ 271(b)(5), 557; *Perez v. U.S. Bureau of Citizenship & Immigr. Servs. (USCIS)*, 774 F.3d 960, 965 n.3 (11th Cir. 2014). When, as in this case, an arriving alien files an adjustment application outside the context of removal proceedings, USCIS has exclusive jurisdiction over the application.[3] *See* 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1); *see also Brito v. Mukasey*, 521 F.3d 160, 166 (2d Cir. 2008) (recognizing that the regulations "provide USCIS with jurisdiction to adjudicate adjustment of status applications for all arriving aliens," subject to a narrow exception not applicable here).

"In general, pursuant to 8 U.S.C. § 1252(a)(2)(B)(i), federal courts lack jurisdiction to review judgments pertaining to certain forms of immigration relief," *Penaranda Arevalo v. Bondi*, 130 F.4th 325, 337 (2025), including applications for adjustment of status under

---

[3] Xia stated on her adjustment application, and there is no dispute, that her status at the time of her entry into the United States was that of an "arriving alien" who "[w]as inspected at a port of entry and paroled." Dist. Ct. Dkt. No. 23-2 at 41.

8 U.S.C. § 1255.  By its terms, § 1252(a)(2)(B)(i) bars review of "any judgment" pertaining to such relief:

> Notwithstanding any other provision of law (statutory or nonstatutory), . . . except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—(i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title . . . .

Section 1252(a)(2)(D) preserves judicial review in a narrow set of circumstances: "Nothing in subparagraph (B) . . . shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review [from a final order of removal] filed with an appropriate court of appeals."

### C. Whether § 1252(a)(2)(B)(i) Applies to USCIS's Denial of Xia's Application for Adjustment of Status

The principal question presented for our review is whether a decision by USCIS to deny an application for adjustment of status under § 1255 constitutes a "judgment" to which the jurisdictional bar in § 1252(a)(2)(B)(i) attaches.[4]  The answer is yes.  In reaching this

---

[4] In *Rahman v. Mayorkas*, we acknowledged that, after the Supreme Court's decision in *Patel v. Garland*, 596 U.S. 328 (2022), "there is an open question as to whether we have jurisdiction to review any aspect of a USCIS decision denying discretionary relief, such as a status adjustment, outside of a removal proceeding." No. 22-904-CV, 2023 WL 2397027, at *1 n.2 (2d Cir. Mar. 8, 2023) (summary order).

9

conclusion, we join every other circuit that has addressed this question.[5]

### 1. The Plain Text of the Statute

To ascertain the scope of § 1252(a)(2)(B)(i), "we start where we always do: with the text of the statute." *Van Buren v. United States*, 593 U.S. 374, 381 (2021). The plain text of this provision compels our conclusion that it encompasses decisions by USCIS to deny or grant relief under § 1255. The preamble to this subsection provides that the jurisdictional bar applies "regardless of whether the judgment, decision, or action is made in removal proceedings." 8 U.S.C.

We declined to address that question then. Today, we answer the narrower question set forth here.

[5] *See Momin v. Jaddou*, 113 F.4th 552, 558 (5th Cir. 2024) (holding that § 1252(a)(2)(B)(i) applied to USCIS's denial of an adjustment application); *Viana Guedes v. Mayorkas*, 123 F.4th 68, 71 (1st Cir. 2024) ("The district court plainly lacked jurisdiction under 8 U.S.C. § 1252(a)(2)(B)(i) to hear appellants' claims challenging USCIS' denial of their adjustment of status applications."); *Nakka v. U.S. Citizenship & Immigr. Servs.*, 111 F.4th 995, 1008 (9th Cir. 2024) ("[B]ecause of the 'regardless' clause, § 1252(a)(2)(B)(i) must be interpreted as also encompassing judgments regarding the granting of discretionary relief that are made by USCIS and DHS outside removal proceedings."); *Hatchet v. Andrade*, 106 F.4th 574, 582 (6th Cir. 2024) (holding that pursuant to § 1252(a)(2)(B)(i), "the district court lacked jurisdiction to review the factual findings of USCIS"); *Abuzeid v. Mayorkas*, 62 F.4th 578, 584 (D.C. Cir. 2023); *Britkovyy v. Mayorkas*, 60 F.4th 1024, 1028–30 (7th Cir. 2023) ("§ 1252(a)(2)(B)(i) operates to eliminate judicial review of the denial of an adjustment-of-status application by USCIS."); *Lee v. U.S. Citizenship & Immigr. Servs.*, 592 F.3d 612, 619 (4th Cir. 2010); *see also Commandant v. Dist. Dir., Miami Dist. (S24), USCIS*, No. 21-10372, 2024 WL 3565390, at *1–2 (11th Cir. July 29, 2024) (unpublished opinion) (holding that "under *Patel*, section 1252(a)(2)(B)(i) stripped the district court of jurisdiction to review" the plaintiffs' challenge to USCIS's denials of their applications for adjustment of status under § 1255).

§ 1252(a)(2)(B). As the Supreme Court noted in *Patel*, "USCIS [is assigned] authority over applications for adjustment of status made outside of removal proceedings." 596 U.S. at 333 (citing 8 C.F.R. § 245.2(a)(1)). In other words, USCIS is the only entity that can issue an authoritative decision on adjustment applications outside the removal context, and it is therefore the only entity whose decisions on those applications could fall within the scope of the "regardless" clause of § 1252(a)(2)(B)(i). Thus, Congress's clear directive that no federal court may review a denial of an adjustment application under § 1255, even if it occurs outside removal proceedings, necessarily applies to decisions by USCIS. *See Lee*, 592 F.3d at 619 ("[T]he language 'regardless of whether the judgment, decision, or action is made in removal proceedings' makes clear that the jurisdictional limitations imposed by § 1252(a)(2)(B) also apply to review of agency decisions made outside of the removal context."); *Abuzeid*, 62 F.4th at 584 (same); *see also Momin*, 113 F.4th at 558 (noting that "every court of appeals to consider the question has held that the jurisdictional bar applies outside the removal context—including to USCIS denials of adjustment of status").

Xia's reading of § 1252(a)(2)(B)(i) is irreconcilable with the statutory text and would nullify part of Congress's directive. As Xia notes, "[i]t is a cardinal principle of statutory construction that a statute ought . . . to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." Appellant's Br. 20 (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)). But it is Xia's interpretation of the statute—not the district

11

court's—that would violate this principle. *See Torres v. Lynch*, 578 U.S. 452, 463 n.8 (2016) (rejecting appellant's reading of a statute because it "conflict[ed] with our ordinary assumption that Congress, when drafting a statute, gives each provision independent meaning"). If only USCIS can decide an adjustment application outside the removal context and its decision does not constitute a "judgment" for purposes of § 1252(a)(2)(B)(i), the "regardless" clause would be meaningless, at least with respect to the enumeration of § 1255 relief. *See United States v. Butler*, 297 U.S. 1, 65 (1936) ("These words cannot be meaningless, else they would not have been used.").

## 2. *Patel v. Garland*

The Supreme Court's reasoning in *Patel* confirms our conclusion. In that case, which concerned an adjustment of status application made under § 1255(*i*) by an alien in removal proceedings, the Court considered whether § 1252(a)(2)(B)(i) forecloses judicial review of "factual findings that underlie a denial of relief," and held that it does. *Patel*, 596 U.S. at 331, 333–34.

The Court explained that § 1252(a)(2)(B)(i) has an expansive reach. The Court agreed with the starting premise that "'judgment' means any authoritative decision." *Id.* at 337–38. Consistent with this "broad definition," § 1252(a)(2)(B)(i) "does not restrict itself to certain kinds of decisions. Rather, it prohibits review of *any* judgment *regarding* the granting of relief under § 1255 and the other enumerated provisions." *Id.* The modifier "any," the Court elaborated, "means that the provision applies to judgments of whatever kind under

§ 1255, not just discretionary judgments or the last-in-time judgment." *Id.* at 338 (internal quotation marks omitted). "Similarly, the use of 'regarding' 'in a legal context generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters *relating* to that subject.'" *Id.* at 338–39 (emphasis added) (quoting *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U. S. 709, 717 (2018)). In short, the Court agreed that § 1252(a)(2)(B)(i)'s jurisdictional bar "encompasses any and all decisions relating to the granting or denying of discretionary relief," including factual findings. *Id.* at 337 (internal quotation marks omitted).

*Patel* severely undermines Xia's argument that the term "judgment" for purposes of § 1252(a)(2)(B)(i) includes only the decisions of an immigration court, not the decisions of USCIS. The Court concluded that the term reaches even an immigration judge's credibility determination, a quintessential factual finding. *See id.* at 341 (observing that "[u]sing the word 'judgment' to describe . . . [a] credibility determination is perfectly natural" and emphasizing that the jurisdictional bar applies to "*any* judgment"). It follows that a decision by USCIS to deny an adjustment application under § 1255 fits within this broad definition. Indeed, the Court acknowledged that its interpretation of § 1252(a)(2)(B)(i) could have the "consequence of precluding all review of USCIS denials of discretionary relief" because "[t]hose decisions are made outside of the removal context, and subparagraph (D) preserves review of legal and constitutional questions only when raised in a petition for review of a final order of removal." *Id.* at 345.

13

While it declined to decide the reviewability of USCIS decisions, the Court suggested that foreclosing review of those decisions might not be an "unintended" consequence of its opinion, as Patel and the government framed it, but rather "consistent with Congress' choice to reduce procedural protections in the context of discretionary relief." *Id.* at 345–46. That choice followed *INS v. St. Cyr*, 533 U.S. 289 (2001), where the Court explained that reading § 1252, as it existed then, to bar review of *all* legal questions in removal cases could raise constitutional concerns. *Id.* at 300. Through the post-*St. Cyr* amendments to § 1252, the Court observed, Congress "preserved review of legal and constitutional questions made within removal proceedings" and simultaneously "extended the jurisdictional bar to judgments made outside of removal proceedings." *Patel*, 596 U.S. at 345–46. Put differently, "[t]o the extent Congress decided to permit judicial review of a constitutional or legal issue bearing upon the denial of adjustment of status, it intended for the issue to be raised to the court of appeals *during removal proceedings*." *Id.* at 346 (quoting *Lee*, 592 F.3d at 620). Thus, the Court suggested, "it is possible that Congress did, in fact, intend to close th[e] door" to judicial review of USCIS decisions. *Id.* at 345.

The Court went on to emphasize that it would not disregard the text of § 1252(a)(1)(B)(i) to accommodate the parties' concern that giving full effect to the plain meaning of the provision could insulate USCIS decisions from judicial review. Although the parties urged it "to avoid the risk of this result," the Court asserted that "it would be difficult to maintain that this consequence conflicts with the statutory

structure." *Id.* at 346. To the contrary, this result—whatever its merits as a matter of policy—comports with "the best interpretation of the statutory text." *Id.* And the statutory text, the Court stressed, dictates the meaning of the provision. *See id.* (citing *Niz-Chavez v. Garland*, 593 U.S. 155, 171 (2021), which observed that "no amount of policy-talk can overcome a plain statutory command").

Nothing in the Court's reasoning supports Xia's argument that only a decision by an immigration court can constitute a judgment to which the jurisdictional bar attaches. Indeed, if Xia were correct, *Patel* could have easily dispatched the parties' concern that the Court's interpretation of § 1252(a)(2)(B)(i) would foreclose judicial review of USCIS decisions by simply explaining that the provision does not apply to those decisions at all. Instead, the Court recognized the possibility that its holding could bar judicial review of those decisions, and then dismissed the parties' concern on the ground that this result would be "consistent with Congress' choice to reduce procedural protections in the context of discretionary relief." *Id.* at 346.

In sum, the logic of *Patel* leads ineluctably to the conclusion that § 1252(a)(2)(B)(i) bars review of a USCIS denial of an application for adjustment of status.

**D. Xia's Remaining Arguments**

Xia raises two additional arguments in an attempt to circumvent § 1252(a)(2)(b)(i)'s jurisdictional bar. First, she argues that USCIS's denial was not discretionary, and therefore does not fall

15

within this provision, because it was "based on statutory grounds that have merely been couched in discretionary language." Appellant's Br. 21–22. Even if we agreed that the agency's decision was not an exercise of discretion (though we agree with the district court that it was), this argument would nonetheless be unavailing. The Supreme Court in *Patel* explained that the jurisdictional bar "applies to judgments of whatever kind under § 1255, *not just discretionary judgments* or the last-in-time judgment." 596 U.S. at 338 (emphasis added) (internal quotation marks omitted). In fact, the Court rejected the government's argument that the term "judgment" for purposes of § 1252(a)(2)(B)(i) "refers exclusively to a 'discretionary' decision," explaining that "[a] 'judgment' does not necessarily involve discretion, nor does context indicate that only discretionary judgments are covered by" the jurisdictional bar. *Id.* at 340–43. Therefore, USCIS's denial is unreviewable regardless of whether it rested on discretionary factors, a determination that Xia is statutorily ineligible for adjustment of status, or both.

Xia's second argument fares no better. She contends that the district court had subject matter jurisdiction under § 1252(a)(2)(D) because her claims raised several questions of law. Even if we agreed that Xia has raised legitimate questions of law (though we agree with the district court that she has not), this argument, too, would be unavailing. Section 1252(a)(2)(D) permits judicial review of constitutional claims or questions of law only by an "appropriate court of appeals," and only "upon a petition for review" from a final order of removal. Xia brought this case in a district court, and she

16

was not petitioning for review of a final order of removal. *See Hassan v. Chertoff*, 543 F.3d 564, 566 (9th Cir. 2008) (holding that § 1252(a)(2)(D) was inapplicable because the plaintiff's "challenge to the denial of adjustment was not raised upon a petition for review filed with th[e] court [of appeals]" but instead "on direct appeal from the district court"). Accordingly, the jurisdictional savings clause in § 1252(a)(2)(D) provides no basis for subject matter jurisdiction in this case.

### III. Conclusion

In summary, we hold:

1. A denial of an application for adjustment of status under 8 U.S.C. § 1255 is a "judgment" for purposes of § 1252(a)(2)(B)(i) regardless of whether it is issued by an immigration court or USCIS.

2. The district court committed no error in (a) concluding that § 1252(a)(2)(B)(i) precludes judicial review of Xia's challenge to USCIS's denial of her application for adjustment of status under § 1255, and therefore (b) dismissing Xia's complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

For the foregoing reasons, we AFFIRM the district court's judgment.

17